IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD AU,<br><br>        Plaintiff,<br><br>  vs.<br><br>REPUBLIC STATE MORTGAGE COMPANY; CHAD COTTON; OPTION ONE MORTGAGE CORPORATION, NOW KNOWN AS SAND CANYON CORPORATION; AMERICAN HOME MORTGAGE SERVICING, INC.; JOHN DOES 1-10; DOE CORPORATIONS 1-10,<br><br>        Defendants.<br>_____ | CIVIL NO. 11-00251 JMS/RLP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT REPUBLIC STATE MORTGAGE COMPANY'S MOTION TO DISMISS PLAINTIFF RONALD AU'S FIRST AMENDED COMPLAINT |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT REPUBLIC STATE MORTGAGE COMPANY'S MOTION TO DISMISS PLAINTIFF RONALD AU'S FIRST AMENDED COMPLAINT

### I. INTRODUCTION

On March 24, 2011, Plaintiff Ronald Au ("Plaintiff"), proceeding pro se,[1] filed this action in the First Circuit Court of the State of Hawaii against Republic State Mortgage Company ("RSMC"), Chad Cotton ("Cotton"), Option One Mortgage Corporation, now known as Sand Canyon Corporation ("Option One"), and American Home Mortgage Servicing, Inc. ("AHMSI"), (collectively

---

[1] Although pro se, Plaintiff was a member of the Hawaii bar from 1963 through 2005.

"Defendants"), asserting state law claims stemming from a mortgage he entered into with RSMC in 2007 regarding real property located at 45-030 Springer Place, Kaneohe, Hawaii (the "subject property"). Plaintiff asserts that the mortgage as written does not represent the true terms of the parties' agreement, and that the parties orally agreed to different terms. Option One subsequently removed the action to this court.

Currently before the court is RSMC's Motion to Dismiss, in which Option One and AHMSI join.[2] Based on the following, the court GRANTS in part and DENIES in part RSMC's Motion to Dismiss.

## II. BACKGROUND

### A. Factual Background

As alleged in the First Amended Complaint ("FAC"), in January 2007, Plaintiff sought to refinance the subject property with RSMC. Doc. No. 1-1, FAC ¶ 8. Cotton, acting as RSMC's agent, informed Plaintiff that he could refinance the subject property for $680,000 at a rate of 7.5% per annum so long as the loan closed by the first week of February 2007. *Id.* ¶ 9. Although Plaintiff was not provided a Good Faith Estimate confirming these terms prior to closing,

---

[2] Cotton has not appeared in this action. Given that the arguments raised by RSMC apply equally to all Defendants, the court addresses the arguments as they apply to all Defendants.

2

Plaintiff did not doubt Cotton because Plaintiff had previously worked with him. *Id.*

At closing on February 2, 2007, the documents indicated that the mortgage was for $700,000 at an interest rate of 8.925%, with closing costs of approximately $20,000. *Id.* After expressing surprise to Cotton at these different terms, Cotton represented to Plaintiff that (1) the increase in the mortgage amount was to provide more monies to Plaintiff; (2) RSMC misunderstood that there was a loan commitment for 7.5%; and (3) after closing, RSMC would adjust the mortgage and promissory note to reflect the correct interest rate, and rebate the closing costs. *Id.* Relying on these representations, Plaintiff signed the mortgage documents. *Id.* This same month, RSMC assigned the note (but not the mortgage) to Option One. *Id.* ¶ 12.

In March and April 2007, Plaintiff contacted RSMC, who claimed that Cotton did not represent RSMC, but instead was associated with The Funding Group. *Id.* ¶ 11. Although not alleged in the FAC, it appears that AHMSI subsequently became involved with the mortgage in some manner because Plaintiff received some information from AHMSI, and AHMSI ultimately told Plaintiff to direct his questions regarding the mortgage terms to RSMC. *Id.* ¶ 12. RSMC told Plaintiff that it would investigate Plaintiff's file to confirm that Plaintiff had agreed

3

to the terms stated in the mortgage before closing, but never provided any documentation to Plaintiff. *Id.* ¶¶ 12-13. Plaintiff is being charged interest based upon the written terms of the mortgage. *Id.* ¶ 17.

**B.    Procedural Background**

Plaintiff filed this action on March 24, 2011 in the First Circuit Court of the State of Hawaii. The FAC asserts claims titled: (1) Breach of Contract (Count I); (2) Breach of Promissory Estoppel (Count II); (3) Intentional or Negligent Misrepresentation and Fraud (Count III); (4) Intentional or Negligent Non-Disclosure (Count IV); (5) Violation of Hawaii Revised Statute ("HRS") Chapter 454 (Count V); (6) Negligence (Count VI); (7) Violation of HRS Chapter 480 (Count VII); and (8) Punitive Damages (Count VIII). On April 14, 2011, Option One removed the action to this court.

On May 9, 2011, RSMC filed its Motion to Dismiss, which Option One substantively joined on May 11, 2011, and AMHSI joined on June 21, 2011. Plaintiff filed an Opposition on June 6, 2011,[3] and RSMC and Option One filed Replies on June 21, 2011. A hearing was held on July 5, 2011, in which the court requested supplemental briefing addressing Defendants' argument that Plaintiff

---

[3] Plaintiff also filed a Motion for Summary Judgment, which the parties agreed to continue to allow AHMSI, who was only recently served in this action, additional time to file an Opposition.

cannot assert a claim pursuant to HRS § 454-8 because it was repealed prior to commencement of this action. RSMC submitted a Supplemental Brief on July 12, 2011, and Plaintiff submitted a Supplemental Opposition on July 21, 2011.

### III. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader

is entitled to relief as required by Rule 8. *Id.* at 1950.

## IV. **DISCUSSION**

Defendants argue that each of Plaintiff's claims fail for a variety of reasons. The court addresses Plaintiff's claims in turn.

### A.     Count I -- Breach of Contract; Count II -- Promissory Estoppel

Count I asserts that RSMC breached the parties' mortgage contract by refusing to acknowledge and apply the terms of the agreement that they had orally agreed to, and instead applying the written terms of the mortgage.[4] *See* Doc. No. 1-1, FAC ¶¶ 8-14. Count II for promissory estoppel asserts that Plaintiff relied upon Cotton's and RSMC's representations regarding the loan terms, resulting in damages to Plaintiff. *See id.* ¶¶ 15-18.

---

[4] In support of the breach of contract claim, the FAC mentions that Cotton committed a Truth in Lending Act ("TILA") violation by failing to provide Plaintiff a Good Faith Estimate. Doc. No. 1-1, FAC ¶ 9. From the court's review of the FAC, it appears that Plaintiff makes this allegation to substantiate the loan terms that Cotton offered Plaintiff, as opposed to asserting a stand-alone TILA violation. If Plaintiff intends to assert a TILA violation, he may file a Second Amended Complaint asserting a specific count for violation of TILA. If Plaintiff chooses to do so, however, Plaintiff cannot state a TILA rescission claim because such claim is time-barred and not subject to equitable tolling. *See* 15 U.S.C. § 1635(f); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (explaining that § 1635(f) is an absolute statute of repose barring "any [TILA rescission] claims filed more than three years after the consummation of the transaction"). A TILA damages claim would also be time-barred by the one-year statute of limitations provided in 15 U.S.C. § 1640(e), unless Plaintiff can establish that equitable tolling applies. *See King v. California*, 784 F.2d 910, 915 (9th Cir. 1986) (stating that equitable tolling may apply to a TILA damages claim); *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." (quotation and citation signals omitted)).

RSMC argues that the court should dismiss these claims as barred by the Statute of Frauds.[5] Based on the following, the court disagrees.

Hawaii Revised Statutes ("HRS") § 656-1 provides, in relevant part:

> No action shall be brought and maintained in any of the following cases: . . . (4) Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them . . . unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized. . . .

*See also Kona Hawaiian Assocs. v. Pac. Group*, 680 F. Supp. 1438, 1451 (D. Haw. 1988) ("Hawaii's statute of frauds requires that any contract for an interest in land and any authority for the signing party to buy land be in writing.").

Section 656-1 "is substantially the same as the original English Statute of Frauds[,]" which "was enacted almost 300 years ago to prevent 'many fraudulent practices, which are commonly endeavored to be upheld by perjury and subornation of perjury.'" *McIntosh v. Murphy*, 52 Haw. 29, 32-33, 469 P.2d 177, 179 (1970). The Statute of Frauds is

> justified on at least three grounds: (1) the Statute still serves an evidentiary function thereby lessening the danger of perjured testimony (the original rationale);

---

[5] Although Option One and AHMSI substantively join RSMC's Motion and Option One even makes substantive arguments as to these claims, it appears that the breach of contract and promissory estoppel claims are alleged against RSMC and Cotton only.

7

> (2) the requirement of a writing has a cautionary effect which causes reflection by the parties on the importance of the agreement; and (3) the writing is an easy way to distinguish enforceable contracts from those which are not, thus chanelling certain transactions into written form.

*Id.* at 33, 469 P.2d at 179.

The Statute of Frauds does not act as an automatic bar, however, and the court may refuse to apply it where its application would work an injustice. Specifically, *McIntosh* describes the relevant inquiry as follows:

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.
>
> (2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was forseeable by the promisor.

*Id.* at 36, 469 P.2d at 181 (quoting Restatement (Second) of Contracts § 217A

(Supp. Tentative Draft No. 4, 1969), subsequently adopted as Restatement (Second) of Contracts § 139); *see also Pedrina v. Chun*, 906 F. Supp. 1377, 1418 (D. Haw. 1995).

Although RSMC argues that these factors support applying the Statute of Frauds to bar Plaintiff's claims for breach of contract and promissory estoppel, the court cannot properly weigh these factors on a motion to dismiss. Specifically, the court cannot determine at this stage whether other remedies such as cancellation and/or restitution are available (especially where the note has been transferred to Option One), the extent to which evidence corroborates the making and terms of the promise, the reasonableness of the action or forbearance, or the extent to which the action or forbearance was foreseeable by Cotton and/or RSMC. These factors raise factual considerations that cannot be resolved on a motion to dismiss.

The court therefore DENIES Defendants' Motion to Dismiss as to Counts I and II of the FAC.

**B.      Count III: Intentional or Negligent Misrepresentation and Fraud**

As to Count III, the FAC asserts that Cotton and RSMC made various misrepresentations regarding the mortgage loan transaction and otherwise committed various other violations of law in consummating the loan. Doc. No. 1-

9

1, FAC ¶ 19. The FAC further asserts that Option One and AHMSI intentionally misrepresented facts and committed fraud when AHMSI made unlawful charges against Plaintiff and provided misleading information regarding the mortgage and note. *Id.* ¶ 20.

Defendants argue that this claim is barred by the economic loss rule and the applicable statute of limitations.[6] The court addresses these arguments in turn.

### 1. *The Economic Loss Rule*

The economic loss rule "bars recovery in tort for purely economic loss." *City Express, Inc. v. Express Partners*, 87 Haw. 466, 469, 959 P.2d 836, 839 (1998). Specifically, HRS § 663-1.2 provides:

> No person may recover damages, including punitive damages, in tort for a breach of a contract in the absence of conduct that: (1) Violated a duty that is independently

---

[6] In a footnote, Defendants further argue that Plaintiff has not asserted reliance in support of a negligent misrepresentation claim. Doc. No. 10-1, RSMC Mot. at 6 n.3. The court rejects this argument -- Plaintiff asserts that he had previously worked with Cotton on a previous mortgage transaction and therefore relied upon his representations. Doc. No. 1-1, FAC ¶¶ 10. Accepting these allegations as true, the court cannot say that this reliance was not justifiable.

In its Reply, Option One also argues that Plaintiff has failed to allege any misconduct by AHMSI as to these claims and otherwise failed to plead fraud with particularity. *See* Doc. No. 32, Option One Reply at 4-8. Although potentially meritorious, the court will not consider arguments raised for the first time on Reply. *See, e.g.*, *Hi-Tech Rockfall Constr., Inc. v. Cnty. of Maui*, 2009 WL 529096, at *18 n.9 (D. Haw. Feb. 26, 2009) ("Local Rule 7.4 provides that '[a]ny arguments raised for the first time in the reply shall be disregarded.'"); *Coos Cnty. v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).

> recognized by principles of tort law; and (2) Transcended the breach of the contract.

This rule "is designed to maintain a distinction between damage remedies for breach of contract and for tort." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, --- F. Supp. 2d ----, 2011 WL 563766, at *17 (D. Haw. Feb. 8, 2011) (citing *Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc*., 115 Haw. 232, 277, 167 P.3d 225, 284 (2007)). The economic loss rule does not, however, bar claims for breach of "professional obligations and duties not arising from the contract itself, but from the relationship between [the parties]." *Haw. Motorsports Inv., Inc. v. Clayton Group Servs.*, 693 F. Supp. 2d 1192, 1199 (D. Haw. 2010).

Defendants have not carried their burden of establishing that the economic loss rule bars Plaintiff's claim. Application of the economic loss rule requires analysis of the basis of the parties' obligations and the particular conduct at issue. Defendants, however, provided absolutely no discussion (much less even a citation to HRS § 663-1.2) of how the factual allegations of the FAC are all directed to a breach of contract as opposed to a breach derived from the relationship of the parties. The court will not carry out Defendants' research and analysis for them.

///

///

## 2. *The Statute of Limitations*

Defendants argue that Count III is barred by the two-year statute of limitations provided in HRS § 657-7, which applies to "[a]ctions for the recovery of compensation for damage or injury to persons or property." Defendants are mistaken -- *Au v. Au*, 63 Haw. 210, 217-218, 626 P.2d 173, 179 (1981), held that the statute of limitations for claims of negligent or intentional misrepresentation are governed by HRS § 657-1(4), providing a six-year statute of limitations for "[p]ersonal actions of any nature whatsoever not specifically covered by the laws of the State." *See also Hubbart v. State of Haw. Office of Consumer Prot. Dep't of Commerce & Consumer Affairs*, 2008 WL 373167, at *5 (D. Haw. Feb. 11, 2008) (explaining that "[c]laims sounding in fraud, whether based on state or federal law, are governed by this six-year statute of limitations," and holding that "all of Plaintiff's claims sounding in fraud or misrepresentation are covered by the six-year statute of limitations period"); *Mroz v. Hoaloha Na Eha, Inc.*, 360 F. Supp. 2d 1122, 1135 (D. Haw. 2005) ("The Supreme Court of Hawaii has held that HRS § 657-1(4) establishes the statute of limitations for claims sounding in fraud." (citing *Eastman v. McGowan*, 86 Haw. 21, 27, 946 P.2d 1317, 1323 (1997)).

The court therefore DENIES Defendants' Motion to Dismiss Count III of the FAC.

## C. Count IV: Intentional or Negligent Non-Disclosure

The FAC asserts that Defendants failed to disclose various pieces of information to Plaintiff (*e.g.*, that Defendants were not authorized or licensed to provide mortgages, that the promissory note was with Option One and/or that RSMC was acting on behalf of Option One, and that AHMSI was assessing unlawful charges), which has caused Plaintiff damages. Doc. No. 1-1, FAC ¶¶ 22-24. As Plaintiff admitted during the July 5, 2011 hearing, this claim is redundant of Count III and these facts should have been pled in conjunction with those in support of Count III. The court therefore GRANTS Defendants' Motion to Dismiss as to Count IV, with leave to amend for Plaintiff to include these allegations as part of Count III.

## D. Count V: Violation of HRS Chapter 454

The FAC asserts that Defendants violated HRS § 454-8 because Plaintiff entered into a mortgage contract with a unlicensed mortgage broker or solicitor, and as a result, the mortgage is void and unenforceable. FAC ¶¶ 25-26. Defendants argue that this claim must be dismissed because HRS § 454-8 was repealed effective January 1, 2011, such that the court cannot grant relief on this claim. In opposition, Plaintiff argues that he can state a claim for violation of HRS § 454-8 because HRS § 454-8 was in effect at the time the loan transaction was

consummated. In sum, at issue is whether Plaintiff may bring a claim for violation of HRS § 454-8 where the statute had been repealed at the time this action was brought, but in effect at the time of the alleged violation. Based on the following, the court answers this question in favor of Plaintiff.

Before its repeal, Chapter 454 generally governed the licensing of mortgage brokers, and § 454-8 (1993) specifically provided that:

> Violation of this chapter shall be punishable by a fine of not more than $1,000 or imprisonment of not more than one year, or both. Any contract entered into by any person with any unlicensed mortgage broker or solicitor shall be void and unenforceable.

Section 454-8 was repealed effective January 1, 2011, *see* 2010 Haw. Sess. Laws Ch. 84, § 29, when the Hawaii Legislature enacted the Secure and Fair Enforcement for Mortgage Licensing Act, HRS Ch. 454F. Unlike the repealed § 454-8, Ch. 454F does not provide that contracts in violation of the Chapter are void and/or unenforceable.

As to the effect of the repeal of HRS Ch. 454, 2010 Haw. Sess. Laws Ch. 84, § 35, specifically provides:

> This act, including the repeal of chapter 454, Hawaii Revised Statutes, effectuated by section 29, does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date.

14

The Hawaii legislature has used this exact same savings clause language[7] in repealing numerous statutes, and the Hawaii Supreme Court has interpreted its meaning.

Specifically, in *Agustin v. Dan Ostrow Construction Co.*, 64 Haw. 80, 636 P.2d 1348 (1981), homeowners brought an action against their contractor after they discovered -- nine years after the construction -- that the contractor had used improper materials. At the time of the construction, a ten-year statute of limitations applied, but by the time the homeowners brought the action, the Hawaii legislature had changed the statute of limitations to six years. In reducing the statute of limitations, the Hawaii legislature included the same savings clause language as in Ch. 454F, and *Agustin* explained that by including this savings clause, "the legislature manifested its intent to give the amended § 657-8 prospective effect only, without disturbing rights, duties, penalties and proceedings in effect before May 20, 1972 [the effective date of the change]." *Id.* at 82, 636

---

[7] Beyond this savings clause specific to Ch. 454, HRS § 1-10 provides a general savings clause that "[t]he repeal of any law shall not affect any act done, or any right accruing, accrued, acquired, or established, or any suit or proceedings had or commenced in any civil case, before the time when the repeal takes effect." The court applies the savings clause specific to HRS Ch. 454 rather than the general one set forth in HRS § 1-10. *See, e.g.*, *Kinkaid v. Bd. of Review of City & Cnty. of Honolulu,* 106 Haw. 318, 320 n.3, 104 P.3d 905, 907 n.3 (2004) ("And in general rules of statutory construction, the specific prevails over the general."); *State v. Carmichael*, 99 Haw. 75, 83, 53 P.3d 214, 222 (2002) ("Thus, in accordance with statutory construction, the court is compelled to favor HRS § 712-1243, a specific statute, over HRS § 702-236, a general statute.").

15

P.2d at 1350. *Agustin* held that the plain meaning of a "right that matured" as used in this savings clause encompasses any rights that the plaintiff acquired prior to the effective date of the change in law. *Id.* at 83, 636 P.2d at 1351. Thus, at the time of the contractor's misconduct, the homeowners had a matured right -- the right to bring a cause of action -- that was not disturbed by the subsequent change in law. *Id.*

Given that *Agustin* interprets the same savings clause language used in the Hawaii legislature's repeal of HRS Ch. 454, its reasoning applies with equal force to this action. *See id.* (outlining rules of statutory construction including that "[w]ords or phrases used in two or more sections of a statute are presumed to be used in the same sense throughout," and that "the legislature is presumed to know the law when enacting statutes"). The court therefore finds that at the time of the loan consummation, Plaintiff had a matured right to bring a cause of action for violation of HRS Ch. 454. The Hawaii legislature preserved Plaintiff's right to bring a cause of action by specifically providing that HRS Ch. 454's repeal did not affect rights that matured. The court therefore DENIES Defendants' Motion to Dismiss Count V.

///

///

### E. Count VI: Negligence

The FAC asserts that RSMC and Option One were negligent in failing to provide documentation and failing to alter the mortgage rate as agreed upon, and that AHMSI was negligent in not providing monthly payment schedules, assessments and charges, failing to pay taxes, assessing insurance premiums and late charges, and providing misleading information. Doc. No. 1-1, FAC ¶¶ 28-30. Defendants argue that this claim is barred by the two-year statute of limitations in HRS § 657-7, governing negligence claims. At the July 2, 2011 hearing, Plaintiff conceded that this claim should be dismissed.

Because this claim is barred by the two-year statute of limitations in HRS § 657-7, the court GRANTS Defendants' Motion to Dismiss Count VI of the FAC.

### F. Count VII: Violation of HRS Chapter 480

Defendants argue that Plaintiff's claim for violation of HRS Chapter 480 is barred by the applicable four-year statute of limitations. *See* HRS § 480-24(a) (barring a chapter 480 claim "unless commenced within four years after the cause of action accrues"). According to Defendants, Plaintiff's claim accrued on February 2, 2007, the date the loan was consummated, and Plaintiff filed this action on March 24, 2011, one month and thirteen days late.

The court disagrees. The FAC asserts that RSMC failed to honor the parties' agreement as to the true terms of the mortgage loan. This failure to honor did not occur on the date the loan was consummated, but rather sometime afterwards. Further, the FAC alleges facts that occurred after the loan consummation, and Defendants have not addressed whether such allegations may form the basis of a Chapter 480 claim. Accordingly, the court DENIES Defendants' Motion to Dismiss Count VII.

## G. Count VIII: Punitive Damages

Count VIII asserts the Defendants' conduct described as in the other claims "justify such amounts of punitive damages to be determined at the time of trial." Doc. No. 1-1, FAC ¶ 34. Defendants argue that this claim should be dismissed because punitive damages is a part of the relief requested, and not an independent claim. Plaintiff concedes that punitive damages is not an affirmative claim for relief. Doc. No. 22, Pl.'s Opp'n at 6.

Because punitive damages is not an independent claim for relief, the court GRANTS Defendants' Motion to Dismiss as to Count VIII. This dismissal, however, does not bar Plaintiff from seeking punitive damages as a form of relief.

///

///

## V. CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part RSMC's Motion to Dismiss. Count IV is dismissed with leave to amend, and Counts VI and VIII are dismissed without leave to amend. Remaining are Counts I, II, III, V, and VII.

Plaintiff may file a Second Amended Complaint asserting a TILA damages claim and/or revising Count III to include the allegations of Count IV, by August 31, 2011. Plaintiff is further notified that a Second Amended Complaint supersedes the Complaint and FAC. *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the court will treat the Complaint and FAC as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original Complaint or FAC is waived if it is not raised in the Second Amended Complaint. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Thus, if Plaintiff chooses to file a Second Amended Complaint, he must also re-allege his claims that were not dismissed from the FAC. If Plaintiff fails to file a Second Amended Complaint by August 31, 2011, this action will proceed on Counts I, II, III, V, and VII.

The court recognizes that Plaintiff has filed a Motion for Summary

Judgment on the FAC, which is tentatively set for September 6, 2011 at 10:00 a.m. As to this Motion, Plaintiff has two options -- he may either (1) forego filing a Second Amended Complaint and proceed on his Motion for Summary Judgment on September 6, 2011, or (2) file a Second Amended Complaint and the court will deem the Motion for Summary Judgment withdrawn without prejudice. In other words, Plaintiff may not file both a Second Amended Complaint while at the same time seek to proceed on his Motion for Summary Judgment. By August 8, 2011, Plaintiff will notify the court via letter regarding which option he has chosen. If Plaintiff chooses to proceed with the Motion for Summary Judgment, then Defendants' Opposition(s) will be due by August 22, 2011, and Plaintiff's Reply will be due by August 29, 2011.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 4, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Au v. Republic State Mortg. Co. et al.*, Civ. No. 11-00251 JMS/RLP, Order Granting in Part and Denying in Part Defendant Republic State Mortgage Company's Motion to Dismiss Plaintiff Ronald Au's First Amended Complaint