IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD AU, | CIVIL NO. 11-00251 JMS/KSC |
| Plaintiff, | ORDER GRANTING IN PART AND |
| | DENYING IN PART DEFENDANTS' |
| vs. | MOTIONS TO DISMISS |
| REPUBLIC STATE MORTGAGE COMPANY; CHAD COTTON; SAND CANYON CORPORATION, f.k.a. OPTION ONE MORTGAGE CORPORATION; HOMEWARD RESIDENTIAL, INC., f.k.a. AMERICAN HOME MORTGAGE SERVICING, INC.; and WELLS FARGO BANK, N.A. AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2007-5 ASSET-BACKED CERTIFICATES, SERIES 2007-5, | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

## I. INTRODUCTION

This action is again before the court after several attempts by Plaintiff

Ronald Au ("Plaintiff"), proceeding *pro se*,[1] to state or to clarify his claims relating

to a February 2007 refinancing transaction and corresponding Note and Mortgage

_____

[1] Plaintiff was a member of the Hawaii bar from 1963 through 2005.

on real property located at 45-030 Springer Place, Kaneohe, Hawaii (the "subject

property").  This Order concerns three Motions to Dismiss Plaintiffs' Fourth

Amended Complaint ("Fourth AC").[2]  The Fourth AC was filed on April 16, 2012,

after the court had dismissed two counts of the Third Amended Complaint

("TAC") with leave to amend, and allowed Plaintiff to add Wells Fargo Bank,

N.A., as Trustee for Option One Mortgage Loan Trust 2007-5 Asset-backed

Certificates, Series 2007-5 ("Wells Fargo") as a Defendant.  *See* Doc. No. 117.

Specifically, this Order addresses the following Motions:

> 1.     Defendant Republic State Mortgage Company's
>        ("RSMC") Motion to Dismiss Plaintiff's Fourth AC.
>        Doc. No. 132.  This Motion is joined by Defendant
>        Homeward Residential, Inc., f.k.a., American Home
>        Mortgage Servicing Inc. ("AHMSI").  Doc. No. 153;
>
> 2.     AHMSI and Wells Fargo's Motion to Dismiss Plaintiff's
>        Fourth AC.  Doc. No. 134; and
>
> 3.     Defendant Sand Canyon Corporation's, f.k.a. Option One
>        Mortgage Corporation ("Sand Canyon"), Motion to
>        Dismiss Plaintiff's Fourth AC.  Doc. No. 136.  This
>        Motion is joined in part by AHMSI.  Doc. No. 153.
>
>        Based on the following, the Motions to Dismiss are GRANTED in

---

[2]  At the July 9, 2012 hearing, for reasons stated in open court, the court also denied both
(1) Plaintiff's Motion for Partial Summary Judgment regarding Count Four of the Fourth AC,
Doc. No. 144; and (2) Defendant RSMC's corresponding Counter-Motion for Partial Summary
Judgment.  Doc. No. 152-1.  Those Motions focused on whether RSMC was registered in Hawaii
as a mortgage broker or was otherwise exempt from registration.  This Order rules on the other
Motions argued at that hearing.

part and DENIED in part.

## II. <u>BACKGROUND</u>

The parties are familiar with this action's lengthy procedural history, and the confusing factual allegations set forth in the current and prior versions of the Complaint. *See, e.g.*, *Au v. Republic State Mortg. Co.*, 2011 WL 3422780 (D. Haw. Aug. 4, 2011); Doc. Nos. 81 & 117 (Orders dismissing prior versions of the Complaint with leave to amend). The court sets forth only the basic allegations of the Fourth AC as necessary to understand the rulings in this Order.

## A. **Factual Background**

For purposes of these Motions, the court assumes that any well-pleaded allegations of the Fourth AC are true. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

The action arises from a February 2, 2007 refinancing transaction on the subject property. During the transaction, Plaintiff dealt with Chad Cotton ("Cotton"), who was, or represented himself to be, associated with RSMC. Doc. No. 128, Fourth AC ¶ 3. Cotton informed Plaintiff that he could refinance the subject property for $680,000 at a rate of 7.5% per annum so long as the loan closed by the first week of February 2007. *Id.* ¶ 9. Although Plaintiff was not provided a Good Faith Estimate confirming these terms prior to closing, Plaintiff

did not doubt Cotton because Plaintiff had previously financed other property though Cotton. *Id.*

At closing on February 2, 2007, the documents indicated that the mortgage was for $700,000 at an interest rate of 8.925%, with closing costs of approximately $20,000. *Id.* ¶ 10. Plaintiff questioned the figures, but Cotton represented to Plaintiff that (1) RSMC had "misunderstood" that there was a loan commitment for 7.5%; and (2) after closing, RSMC would adjust the mortgage and promissory note to reflect the correct interest rate, and rebate the closing costs. Relying on these representations, Plaintiff proceeded to close escrow. *Id.*

RSMC then assigned the Note and Mortgage on February 8, 2007 to Sand Canyon. *Id.* ¶ 12. Subsequently, Sand Canyon assigned the Note to Wells Fargo on April 1, 2007 as part of a loan securitization Pooling and Service Agreement. *Id.* ¶ 29A. It is unclear whether Sand Canyon assigned the Mortgage at that time, although documents in the record and attached to the Fourth AC indicate the Mortgage was assigned by Sand Canyon on January 4, 2012. *Id.* Ex. G. That assignment was recorded in the Hawaii Bureau of Conveyances on January 12, 2012. *Id.*

AHMSI is the loan servicer. *Id.* ¶ 5. Although it is not clear from the Fourth AC, it appears undisputed that Sand Canyon was originally the loan

servicer but sold its loan servicing business to AHMSI in 2008.  *See* Doc. No. 136-3, Sand Canyon Mot. at 13 n.6; Doc. No. 155-1, D. Sugimoto Decl. ¶¶ 6, 7.

In March and April 2007, Plaintiff contacted representatives of RSMC, who claimed that Cotton did not represent RSMC, but instead was associated with "The Funding Group."  Doc. No. 128, Fourth AC ¶ 11.  Plaintiff also contacted AHMSI, and AHMSI told Plaintiff to direct his questions regarding the mortgage terms to RSMC.  *Id.* ¶ 12.[3]  Subsequently, RSMC, in communications in 2009 and 2010, told Plaintiff that it would investigate Plaintiff's file, and was told, among other things, that it "ha[s] ordered the file from storage," that "the company which has your loan documents bases part of its operations in [I]ndia," and "we are literally trying to get documents sent to us from India."  Fourth AC Exs. C & D.

**B.     Procedural Background**

Plaintiff originally filed this action in state court on March 24, 2011, and his First Amended Complaint was subsequently removed to this court.  On August 4, 2011, the court issued an Order Granting in Part and Denying in Part a Motion to Dismiss by RSMC.  *See* Doc. No. 46, 2011 WL 3422780.  Subsequently,

---

[3] Other allegations of communications Plaintiff had with AHMSI are set forth below in relation to AHMSI's Motion to Dismiss.

after an Order on a Motion by AHMSI to Dismiss a Second Amended Complaint, Plaintiff filed a TAC on November 28, 2011. The TAC asserted six claims against RSMC, Cotton, AHMSI, and Sand Canyon (although it was not always clear which claims were asserted as to each Defendant).[4]

On March 8, 2012, the court dismissed the TAC after a second Motion to Dismiss by AHMSI, but granted further leave to amend to add Wells Fargo as a Defendant because -- as was apparently only disclosed in January 2012 -- it is the current holder of both the Note and Mortgage. Wells Fargo, at minimum, is a required party to an action seeking to void the Note and Mortgage (and the TAC had alleged that Sand Canyon was the current holder).

Specifically, in its March 8, 2012 Order, the court "granted Plaintiff six weeks leave to file a Fourth Amended Complaint to add Wells Fargo as a Defendant, and to consider what claims can or must be added against Wells Fargo." Doc. No. 117, Order at 3. The court also dismissed Counts Three (misrepresentation and/or Real Estate Settlement Procedures Act ("RESPA")) and Five (Unfair or Deceptive Trade Acts or Practices) of the TAC, with leave to

---

[4] The six claims were: (1) Breach of Contract, (2) "Breach of Promissory Estoppel," (3) Intentional or Negligent Misrepresentation, (4) Violation of Hawaii Revised Statutes ("HRS") Ch. 454 (seeking to void the Note and Mortgage because of an unlicensed mortgage broker), (5) Violations of HRS Ch. 480, and (6) Violations of the Truth in Lending Act ("TILA").

amend for Plaintiff to:

> revise his allegations against AHMSI (and other
> Defendants named in Counts Three and Five). That is,
> Plaintiff is granted leave to amend to clarify his RESPA
> claims -- and add a separate Count for violations of
> RESPA, if that is his intention -- as well as to revise his
> allegations to attempt to state claims for
> misrepresentation and violations of HRS Chapter 480.

*Id.* at 8-9. Plaintiff was not granted leave to add (or to revise) any other claims or counts to the TAC.

Plaintiff responded on April 16, 2012 by filing the thirty-nine page Fourth AC, which alleges the following twelve Counts:

- Count One - Breach of Contract
- Count Two - "Breach of Promissory Estoppel"
- Count Three - Intentional or Negligent Misrepresentation
- Count Four - Violations of HRS Ch. 454
- Count Five - Violations of TILA
- Count Six - Violations of HRS § 454F-17
- Count Seven - Fraud, Nondisclosure, Concealment
- Count Eight - HRS 490:1-203 (UCC Good Faith and Fair Dealing)
- Count Nine - Violations of HRS §§ 454D, 454D-6, 454-3(1), 454M, 454M-6, and RESPA, 12 U.S.C. § 2605
- Count Ten - Violations of HRS Ch. 480
- Count Eleven - Violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(a)(6)
- Count Twelve - "Holder in Due Course, HRS 490-3-302"

RMSC, AHMSI, Wells Fargo, and Sand Canyon filed Motions to Dismiss on April 30, 2012. Doc. Nos. 132, 134, 136. (Cotton has not appeared in

the action, as Plaintiff represents that he has been unable to locate and perfect service on Cotton.)  Plaintiff filed his Opposition to the Motions on June 14, 2012, Doc. No. 151, and Replies were filed on June 25, 2012.  Doc. Nos. 158, 159, 160. The Motions were heard on July 9, 2012.

### III.  STANDARDS OF REVIEW

**A.  Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Id.* at 678.   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## B.    Rule 8

A complaint must also meet the requirements of Federal Rule of Civil Procedure 8, mandating that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "true substance, if any, is well disguised" may be dismissed sua sponte for failure to satisfy Rule 8. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)); *see also McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)

("Something labeled a complaint but written . . . , prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.").

Put differently, a district court may dismiss a complaint for failure to comply with Rule 8 where the complaint fails to provide defendants with fair notice of the wrongs they have allegedly committed. *See McHenry*, 84 F.3d at 1178-80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); *cf. Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted).

///

///

///

# IV. **DISCUSSION**

Initially, the court dismisses Counts Six, Seven, Eight, Eleven, and Twelve of the Fourth AC as to any Defendant other than Wells Fargo.[5] These new Counts (and parts of some of the others, as explained more fully below) exceed the scope of the March 8, 2012 Order. Plaintiff was only granted leave to add claims against Wells Fargo and to clarify allegations in Counts Three and Five of the TAC. Instead, Plaintiff also added *new* claims against other Defendants based upon the January 2012 recording of the assignment of the Mortgage from Sand Canyon to Wells Fargo. If Plaintiff truly believes, after a good faith investigation of applicable law, that the January 2012 assignment constitutes a legitimate basis for a further amendment of the Complaint, he must do so by first seeking leave to amend under Federal Rule of Civil Procedure 15.[6] That is, the court GRANTS

---

[5] The court also dismisses these Counts against Cotton even though he has not entered an appearance. *See, e.g.*, *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) (upholding dismissal in favor of a party which had not appeared, on the basis of facts presented by other defendants which had moved to dismiss) (citations omitted).

[6] In this regard, AHMSI notes that there is no automatic obligation to record an assignment under Hawaii law. *See* Doc. No. 159, AHMSI Reply at 8 n.7 (citing HRS § 502-83, which provides that "[a]ll deeds, leases for a term of more than one year, mortgages of any interest in real estate, or other conveyances of real estate within the State, shall be recorded in the bureau of conveyances"). Although there are no allegations regarding the use of the Mortgage Electronic Registration System ("MERS") here, the lack of recording of an assignment of mortgage is a feature of MERS, the proper use of which is not fraudulent. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011) ("MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender."); *Jackson v. Mortg. Elec.*
(continued...)

RSMC's Motion seeking to dismiss the new claims asserted against RSMC in the Fourth AC (RSMC's Motion was limited to challenging these new claims).[7]  The court also GRANTS AHMSI's and Sand Canyon's Motions in this respect,[8] as they also argued that adding these new claims violated the March 8, 2012 Order.

The court proceeds to address the arguments made by AHMSI, Wells Fargo, and Sand Canyon as to the remaining Counts of the Fourth AC.  The court addresses each Defendant's Motion separately.

---

[6](...continued)
*Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009) ("The MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located.").

Further, to the extent the Fourth AC attempts to assert a violation of the Sand Canyon/Wells Fargo Pooling Service Agreement ("PSA"), it is established that Plaintiff -- as neither a party to, nor a beneficiary of, the PSA -- lacks standing to challenge such alleged violations.  *See, e.g.*, *Velasco v. Security Nat'l Mortg. Co.*, 823 F. Supp. 2d 1061, 1067 (D. Haw. 2011) (rejecting "slander of title" claim challenging assignment of the note and mortgage because where the borrower is not a party or intended beneficiary of the assignment, he cannot dispute the validity of the assignment); *Abubo v. Bank of N.Y. Mellon*, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011) (rejecting claim asserting violation of a PSA because a third party lacks standing to raise a violation of a PSA); *Williams v. Rickard*, 2011 WL 2116995, at *5 (D. Haw. May 25, 2011) (explaining the difference between a borrower's and lender's standing to raise affirmative claims in this context).

If Plaintiff chooses to seek leave under Federal Rule of Civil Procedure 15 to add claims based on the timing of the recording of the assignment, or a violation of the PSA in the current context, he should first consider whether such claims are plausible.

[7]  Given this ruling, the court need not address the alternate argument made by RSMC that the new claims are barred by statutes of limitations.

[8]  Count Eleven for violations of the Fair Debt Collection Practices Act was not asserted against RSMC.  Thus, Counts One, Two, Three, Four, Five, and Ten remain as against RSMC and Cotton.

### A.      Claims Against AHMSI

Counts One, Two, Four, Five, and Eleven were not asserted against AHMSI.  The court addresses the remaining claims against AHMSI -- Counts Three, Nine, and Ten -- as follows:

#### 1.      *Count Three (Misrepresentation) Fails to State a Claim Against AHMSI*

AHMSI argues that Count Three for intentional or negligent misrepresentation, as revised in the Fourth AC, fails to state a claim against AHMSI.  The court agrees.

Count Three alleges, among other things, that AHMSI is liable for misrepresentation for "intentionally or negligently not responding to Plaintiff Au's written inquiries" on Plaintiff's mortgage payments and insurance and tax assessments.  Doc. No. 128, Fourth AC ¶ 30A.  It alleges that AHMSI "fail[ed] to provide annual escrow statements," and "intentionally or negligently delayed or provided no response to Plaintiff Au's written inquiries for the purpose of placing Plaintiff Au in jeopardy on his mortgage and promissory note, and placing Plaintiff Au in a delinquent status."  *Id.* ¶¶ 30B & C.  Confusingly, it also alleges that "AHMSI, under HRS 454D-6 (effective July 1, 2010), breached its fiduciary responsibility as to all escrow funds . . . and . . . has breached its fiduciary responsibility by its intentional or negligent misrepresentations."  *Id.* ¶ 30D.

Count Three fails to state a claim because it does not allege that AHMSI affirmatively misrepresented anything to anyone -- at best it alleges a failure to disclose information, a failure to respond to Plaintiff's inquiries, or a failure to perform contractual duties. Misrepresentation, however, requires, among other elements, that "false information be *supplied* as a result of the failure to exercise reasonable care or competence in communicating the information[.]" *Blair v. Ing*, 95 Haw. 247, 269, 21 P.3d 452, 474 (2001) (citations omitted) (emphasis added). Count Three omits this element -- it does not allege that AHMSI supplied false information. Likewise, Count Three's reference to a fiduciary duty in HRS § 454D-6 does not state a claim for negligent or intentional misrepresentation.[9]

---

[9] Although HRS § 454D-6 provided in part that "[e]very servicing agent shall be considered a fiduciary with respect to its customers," it was repealed in 1999. Plaintiff does not explain how § 454D-6 has any application to AHMSI, which began servicing Plaintiff's loan in 2007, over eight years after the law was repealed. If Plaintiff meant to refer to HRS § 454M-6 (effective July 1, 2010), Plaintiff cites no provision or authority indicating how chapter 454M -- assuming it would apply to AHMSI's servicing activities after July 1, 2010 -- relates to his claim for misrepresentation. Section 454M, as recently revised on July 9, 2012, provides:

> (a) It shall be unlawful for any mortgage servicer in the course of any mortgage loan transaction:
>     (1) To misrepresent or conceal material facts, to make false promises, or to pursue a course of misrepresentation through its agents or otherwise;
>     (2) To engage in any transaction, practice, or course of business that is not in good faith, does not constitute fair dealing, or that constitutes a fraud upon any person, in connection with the servicing, purchase, or sale of any mortgage loan;

(continued...)

In short, Count Three is DISMISSED as to AHMSI.

**2.      Count Nine ("*Violation of Hawaii Revised Statutes 454D, 454D-6, 454-3(1), 454M, 454M-6 (Effective July 1, 2010[)], and 12 USCS Section 2605 et seq., RESPA, 24 CFR 3500 et seq.") Fails in Part as to AHMSI*

Previously, the TAC improperly placed RESPA allegations in the middle of Plaintiff's misrepresentation claims.  Similar RESPA allegations were also included within a claim for unfair and deceptive acts in Count Five of the TAC.  *See* Doc. No. 84, TAC ¶ 26.  The court granted leave to amend the TAC, in part, to allow Plaintiff the opportunity to attempt to assert RESPA claims in a separate count.  Count Nine of the Fourth AC is the result -- it alleges, among other things that:

> Defendant AHMSI, as the servicer[,] has violated HRS 454-3.1(1) and 12 USCS Section 2605e(1),(2) (RESPA), and HRS 454 M-6.1 [sic. 6(1)] (effective July 1, 2010), by Defendant AHMSI's failure to provide information

---

[9](...continued)

>       (3) To fail to comply with the mortgage loan servicing transfer, escrow account administration, or borrower inquiry response requirements imposed by sections 6 and 10 of the Real Estate Settlement Procedures Act, 12 United States Code sections 2605 and 2609, and regulations adopted thereunder by the Secretary of Housing and Urban Development; or
>       (4) To fail to comply with applicable federal laws and regulations related to mortgage servicing.
> (b) It shall be unlawful for any mortgage servicer to provide any mortgage loan modifications or other services that would require licensing pursuant to chapter 454F, unless the mortgage servicer is licensed under chapter 454F.

and clarification within 20 days . . . .  Plaintiff Au attempted to obtain information on his account through a toll-free company in the country of India . . . .  Plaintiff Au was not provided a direct telephone contact with the Defendant AHMSI in the United States, and was required to attempt to obtain by written request information from Defendant AHMSI in the United States; and Plaintiff Au resorted to correspondence with the servicing agent in Texas[.]

Doc. No. 128, Fourth AC ¶ 72.  It further alleges:

On November 29, 2010, Plaintiff Au communicated with Defendant AHMSI as the loan servicer to provide an itemization of Plaintiff Au's escrow account . . . .  <u>Au received no response</u> from Defendant AHMSI and repeated his request in writing on December 14, 2010, and on March 17, 2011, and on March 29, 2011, after Au continued to receive letters from Defendant AHMSI of delinquency and threatening foreclosure against Au. . . . .

*Id.* ¶ 72A (emphasis in original).  And it makes other similar allegations that

AHMSI failed to respond to written requests.  For example:

On April 5, 2011, Au requested Defendant AHMSI as to the brief analysis of the escrow account, inquiring why Au had been assessed charges for the county real property tax . . . .  Defendant AHMSI has never provided a response[.] . . . Au had previously made wire transfers from his checking account to Defendant [AHMSI] . . . .  Plaintiff wrote to Defendant AHMSI on January 24, 2011, and on March 1, 2011, to provide an explanation or details and <u>Defendant AHMSI has never responded</u>. . . .

> On April 25, 2011, Plaintiff . . . wrote to Defendant
> AHMSI that according to Plaintiff's calculation Plaintiff
> had overpaid or had been overcharged $35,714.00 . . . .
> <u>Defendant AHMSI has never responded</u>.

*Id.* ¶¶ 72B-D (emphases in original).

These and other similar allegations in Count Nine sufficiently allege

violations of RESPA (12 U.S.C. § 2605(e)) and related potential violations of HRS

Ch. 454M.[10] *See, e.g.*, *Menashe v. Bank of N.Y.*, --- F. Supp. 2d ----, 2012 WL

397437, at *5-7 (D. Haw. Feb. 6, 2012) (setting forth requirements in 12 U.S.C.

§ 2605(e) for a loan servicer to respond to a qualified written request for loan

servicing information); HRS § 454M-6(3) ("It shall be unlawful for any mortgage

servicer in the course of any mortgage loan transaction: . . . (3) To fail to comply

with the mortgage loan servicing transfer, escrow account administration, or

borrower inquiry response requirements imposed by [RESPA.]").  The court thus

DENIES AHMSI's Motion to that extent.

The court, however, GRANTS AMHSI's Motion as to Count Nine's

allegations of violations of HRS §§ 454D, 454D-6, and 454-3.1(1).  Chapter 454D

---

[10] HRS Ch. 454M regulates "mortgage servicers," effective July 1, 2010.  *See* Act 106, 2009 Haw. Sess. L. § 3.  The TAC had included -- albeit misplaced within its Count Five -- an allegation related to a violation of HRS 454M-6 such that a similar allegation in Count Nine of the Fourth AC is allowable under the court's March 8, 2012 Order.  *See* Doc. No. 84, TAC ¶ 26 ("the conduct of [AHMSI], as the loan servicer  . . . violates RESPA [and] HRS Chapter 454 M-6, Prohibited activities of loan services in the State of Hawaii[.]").

was repealed in 1999, and thus provides no basis for liability against AHMSI for activity that occurred beginning in 2007. Similarly, even when § 454-3.1(1)[11] was effective, it did not apply to mortgage servicers such as AHMSI, and thus provides no basis for a claim against AHMSI.

Likewise, the court GRANTS AHMSI's Motion as to Count Nine's request that:

> the Court determine that the conduct of AHMSI should be the basis for equitable tolling of the Statute of Limitations for rescission of the mortgage and promissory note; and that Defendant AHMSI because of its conduct has no standing to foreclose on the [subject] property or on Plaintiff Ronald Au.

Doc. No. 128, Fourth AC ¶ 74. RESPA violations are not a basis to rescind a mortgage transaction. *See, e.g.*, *Sakugawa v. Countrywide Bank F.S.B.*, 769 F. Supp. 2d 1211, 1221 (D. Haw. 2011) ("Plaintiff's claim for rescission under RESPA fails because rescission is not a form of relief offered by the statute"). Plaintiff might be attempting to assert that AHMSI's failure to disclose loan

---

[11] Repealed effective January 1, 2011, HRS § 454-3.1 provided, in pertinent part:

For any transaction between a mortgage broker or a mortgage solicitor and a borrower, the following requirements shall apply:

> (1) A mortgage broker and a mortgage solicitor shall comply with all provisions of the Real Estate Settlement Procedures Act, the Truth in Lending Act, and the Equal Credit Opportunity Act, as those laws currently exist or as they may be amended.

information is a basis for equitable tolling so as to be able to seek rescission under TILA. In an earlier Order in this action, however, the court dismissed a claim for rescission under TILA as time-barred, and reiterated the principle that such a rescission claim is not subject to equitable tolling. *See Au*, 2011 WL 3422780, at *2 n.4. Finally, allegations that AHMSI lacks standing to foreclose are superfluous -- there are no allegations that AHMSI is now seeking to foreclose in the first place.

In short, Count Nine is dismissed IN PART, but remains as to allegations of RESPA and HRS § 454M-6 violations against AHMSI.

### 3. Count Ten (HRS Ch. 480) Fails in Part as to AHMSI

In a confusing manner, Count Ten (which was previously Count Five of the TAC) alleges violations of HRS Ch. 480. Stating a claim for a violation of HRS § 480-2 requires allegations of (1) an unfair or deceptive trade practice, (2) injury to the plaintiff's business or property resulting from that practice, and (3) proof of actual damages. *See, e.g.*, *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 113-14, 148 P.3d 1179, 1215-16 (2006). As to AHMSI, much of Count Ten is based upon the same facts as alleged in Counts Three and Nine -- allegedly failing to respond to Plaintiff's inquiries, misrepresenting matters relating to TILA requirements, and violating various statutes listed in Count Nine. *See*

Doc. No. 128, Fourth AC ¶ 80.

To the extent Plaintiff alleges a § 480-2 claim based upon time-barred TILA violations, such a state-law claim is preempted by TILA. *See, e.g.*, *Kajitani v. Downey Sav. & Loan Ass'n, F.A.*, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008). Similarly, a viable § 480-2 cause of action does not necessarily follow from violations of RESPA. *See Stanton v. Bank of Am., N.A.*, 2010 WL 4176375, at *12 (D. Haw. Oct. 9, 2010) ("[T]he fact that . . . an action is contrary to RESPA (or contractual mandates) does not constitute a per se unfair business practice because RESPA and HRS § 480-2 have differing 'scope and application.'") (citing *Haw. Comm. FCU v. Keka*, 94 Haw. 213, 229 n.15, 11 P.3d 1, 17 n.15 (2000), for its holding that a violation of TILA does not constitute a per se violation of HRS § 480-2)).

Nevertheless, the scope of the Fourth AC's allegations against AHMSI could encompass conduct -- beyond that necessarily preempted by federal law -- which might otherwise constitute unfair or deceptive trade practices under chapter 480. *See id.* at *10 (reiterating Hawaii law that "the terms unfair and deceptive [in chapter 480] should be interpreted broadly" and allowing a § 480-2 claim based upon allegations of improper servicing). For example, the Fourth AC alleges that AHMSI "fail[ed] to provide escrow and accounting information . . .

overcharg[ed] for fire, hazard, hurricane insurance premiums, . . . assess[ed] delinquent charges, fail[ed] to promptly credit Plaintiff Au upon receipt of monthly payments, . . . [and] fail[ed] to provide an annual detailed and complete escrow account statement." Doc. No. 128, Fourth AC ¶ 80. Count Ten alleges enough to state a § 480-2 claim against AHMSI. Although verbose, Count Ten sufficiently alleges a "plausible" claim so as to withstand AHMSI's Motion.

In short, AHMSI's Motion as to Count Ten is GRANTED in PART, and DENIED in PART.

## B. Claims Against Wells Fargo

Counts One, Two, and Nine were not alleged against Wells Fargo, and Wells Fargo has not moved to dismiss Counts Four, Five, and Seven. *See* Doc. No. 134-1, Wells Fargo Mot. at 5 n.4. The court thus addresses Counts Three, Six, Eight, Ten, Eleven, and Twelve as to Wells Fargo.

### 1. *Count Three (Misrepresentation) Fails to State a Claim Against Wells Fargo*

Count Three alleges that "[t]he conduct of [Sand Canyon] and [Wells Fargo] constitutes intentional and negligent misrepresentation," Doc. No. 128, Fourth AC ¶ 29. Construed liberally, Count Three alleges that Wells Fargo committed misrepresentation by failing to disclose that "the mortgage and promissory note from [RSMC] after being assigned to [Sand Canyon], on February

21

8, 2007, was assigned to . . . [Wells Fargo] under the Pooling and Servicing Agreement [d]ated April 1, 2007." *Id.* ¶ 29A. It further alleges that Wells Fargo committed misrepresentation by not disclosing the "purported assignment of the mortgage and promissory note by [Sand Canyon] to [Wells Fargo], on or about April 1, 2007," and not disclosing the "purported assignment of [Sand Canyon] of the mortgage and promissory note to [Wells Fargo] . . . until January 4, 2012." *Id.* ¶ 29B. It also alleges that it was a "material nondisclosure" not to disclose those assignments when Wells Fargo "as the assignee from [Sand Canyon] knew or should have known that [RSMC] was not licensed in the State of Hawaii under HRS 454[.]" *Id.* ¶ 29D.

These allegations fail for the same reasons they fail as to AHMSI: there are no allegations that Wells Fargo made any affirmative representations. *See, e.g.*, *Blair*, 95 Haw. at 270, 21 P.3d at 472 (requiring supplying of false information to state a claim for misrepresentation).

Count Three also names Wells Fargo as having committed misrepresentation when it alleges that *AHMSI* "as the loan servicer for [Sand Canyon] and [Wells Fargo]" committed misrepresentation by failing to respond to Plaintiff's written requests for information." *Id.* ¶¶ 30A-D. It fails, however, to allege any facts against Wells Fargo. It does not allege that Wells Fargo has failed

to respond to requests.  At best, Count Three may be attempting to allege that Wells Fargo is liable for AHMSI's misrepresentation, although an agency/respondeat superior theory is not plead.  And, in any event, as explained above, Count Three fails to state a claim against AHMSI and thus cannot state a claim against Wells Fargo for AHMSI's actions.

Accordingly, Count Three is DISMISSED as to claims against Wells Fargo.

### 2. Count Six (HRS §§ 454-4 & 454F-17) Fails to State a Claim Against Wells Fargo

Count Six alleges that Wells Fargo, among other Defendants, violated HRS § 454-4 (which regulated mortgage brokers and solicitors, but was repealed in 2010).  *See* Doc. No. 128, Fourth AC ¶¶ 44, 47.  It also alleges that Wells Fargo violated HRS § 454F-17 (which regulates "mortgage loan originators," effective July 1, 2010).  *Id.* ¶ 49.  Specifically, the Fourth AC alleges in pertinent part that:

> 47. . . .  Defendant [Sand Canyon] colluded with [Wells Fargo] to assign the mortgage and promissory note pursuant to a pooling and service agreement of April 1, 2007.  The assignment of the mortgage and promissory note . . . was not disclosed to Plaintiff Au. . . .  The assignment to [Wells Fargo] was intended to qualify [Wells Fargo] as a holder in due course and a bona fide purchaser.
>
> 48.  The pooling and servicing agreement with [Wells Fargo] specifically provided that the mortgage and

promissory note executed by Plaintiff Au on February 2, 2007, with [RSMC] be transferred and delivered to [Wells Fargo]. On information and belief, the mortgage and promissory note of February 2, 2007, was never transferred or delivered to [Wells Fargo] on April 1, 2007, pursuant to the pooling and service agreement.

49. The assignment of the mortgage by [Sand Canyon] to [Wells Fargo] did not occur until January 4, 2012, which was recorded in the State of Hawaii Bureau of Conveyances . . . . On information and belief, the assignment of the mortgage and promissory note of February 2, 2007, has never been transferred or delivered to [Wells Fargo]. The assignment of the mortgage by [Sand Canyon] to [Wells Fargo] on January 4, 2012, is a violation of HRS 454 F-17, as a prohibited practice. HRS 454-17, effective July 1, 2010, provides in part that it is a violation for a licensee or person subject to HRS 454 F-17, to engage in any unfair or deceptive trade practice towards any person.

*Id.* ¶¶ 47-49.

These allegations fail to state a claim against Wells Fargo. Under the Fourth AC, Wells Fargo is the assignee and current holder of the subject Note and Mortgage. It was not acting as a "mortgage broker or solicitor" in February 2007 when the subject loan transaction occurred. Thus, assuming that chapter 454 would apply to actions occurring prior to its repeal, Plaintiff's allegation that Wells Fargo violated § 454-4 by "collud[ing] to assign the mortgage and promissory note pursuant to a pooling and servicing agreement," *id.* ¶ 47, fails to state a claim. Moreover, § 454-4(a) provided for enforcement of chapter 454 by the Department

of Commerce and Consumer Affairs for violations, but there is nothing indicating that it provided a private cause of action for violations.[12]

Likewise, Wells Fargo was not the loan originator for the February 2007 loan transaction, and thus could not have violated any provision of HRS § 454F-17 in January 2012, when the Mortgage was assigned by Sand Canyon to Wells Fargo.[13]  And, even assuming Wells Fargo would otherwise meet the definition of a "loan originator" (for loans originating after July 1, 2010), there are no facts alleged indicating it could have violated provisions of chapter 454F-17. The only facts alleged as to Wells Fargo are that the Mortgage was not assigned by

---

[12]  Section 454-4 provided that "the commissioner [(the Director of the Department of Commerce and Consumer Affairs)] may suspend a license" for listed misrepresentations or rules violations.  Likewise, Ch. 454 provided that the Director of the Department of Commerce and Consumer Affairs could investigate mortgage brokers, enjoin licensees, and bring actions to impose fines or imprisonment.  *See* HRS §§ 454-5, 454-8 (repealed effective Jan. 1, 2011).

[13]  Section 454F-17 (effective July 1, 2010) defines "prohibited practices" for mortgage loan originators, making it a violation of chapter 454F to, among other actions:

> (1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person;
> (2) Engage in any unfair or deceptive practice related to mortgage loan origination activities toward any person;
> . . . .
> (7) Fail to make disclosures as required by this chapter and any other applicable state or federal law including rules or regulations adopted pursuant to state or federal law; [or]
> (8) Fail to comply with this chapter or any order or rule issued or adopted under the authority of this chapter, or fail to comply with any other state or federal law, including the rules and regulations adopted pursuant to state or federal law applicable to any business authorized or conducted pursuant to this chapter[.]

Sand Canyon to Wells Fargo until January 2012, and/or the assignment was not recorded until January 12, 2012. Plaintiff has not explained how that assignment violates chapter 454F.

Accordingly, Count Six is DISMISSED as to Wells Fargo.

### 3. *Count Eight (Violation of "HRS Chapter 490:1-203 Uniform Commercial Code, Good Faith and Fair Dealing") Fails to State a Claim*

Count Eight alleges that "the fraudulent mortgage practice" of Wells Fargo (among other Defendants) "is a violation of HRS [§] 490:1-203 (Uniform Commercial Code) [because] . . . pursuant to Hawaii law in all contracts there is an expressed or implied duty of 'good faith and fair dealing.'" Doc. No. 128, Fourth AC ¶ 63. Based on a breach of this alleged duty, Count Eight seeks damages and "requests th[e] court to set aside the mortgage and promissory note pursuant to HRS 454-8, [as Defendants] have no standing to enforce the mortgage and promissory note and are not holders in due course." *Id.* ¶ 65.

Plaintiff cites to "HRS 490:1-203" for contractual duties of good faith and fair dealing. Section 490:1-203, however, refers to whether leases are distinguished from security interests, and has nothing to do with contractual duties of good faith and fair dealing under the Uniform Commercial Code. Plaintiff is apparently referring to a prior version of § 490:1-203 (which -- although it indeed

referred to contractual duties of good faith -- was repealed in 2004).  The prior

§ 490:1-203 was replaced by the current HRS § 490:1-304, which provides that

"[e]very contract or duty within this chapter imposes an obligation of good faith in

its performance and enforcement."

Nevertheless, "although commercial contracts for 'sale of goods'. . .

contain an obligation of good faith in their performance and enforcement [in HRS

§ 490:1-304], this obligation does not create an independent cause of action."

*Marzan v. Bank of Am.*, 779 F. Supp. 2d 1140, 1147 (D. Haw. 2011) (citing

*Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028,

1037-38 (D. Haw. 2006)).  Thus, § 490:1-304 cannot provide a basis for Plaintiff

to seek damages or to set aside the Note and Mortgage.

Plaintiff also claims to be a third-party beneficiary of a contract

between Sand Canyon and Wells Fargo, and thus appears to be asserting a common

law bad faith (breach of duty of good faith and fair dealing) cause of action against

Wells Fargo (among other Defendants).  Doc. No. 128, Fourth AC ¶¶ 63-64.  Such

a claim fails because, even assuming there were a duty of good faith in an non-

insurance contract between Sand Canyon and Wells Fargo, Plaintiff would not be

entitled as a third-party beneficiary to pursue such a claim.  *See Jou v. Nat'l*

*Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App.

2007) ("[T]he tort of bad faith, as adopted in *Best Place* [*v. Penn Am. Ins. Co.*, 82 Haw. 120, 157 P.3d 561 (1996)], requires a contractual relationship between an insurer and an insured.") (citing *Simmons v. Puu*, 105 Haw. 112, 120, 94 P.3d 667, 675 (2004)).

In short, Count Eight of the Fourth AC fails to state a claim against Wells Fargo.

### 4. Count Ten (violation of HRS §§ 480-2 & 480-12) Fails to State a Claim Against Wells Fargo, Aside from its Request for a Declaration That the Note and Mortgage Are Void

Count Ten (analyzed as to AHMSI above) also alleges, among other claims, violations of HRS § 480-2 against Wells Fargo for unfair or deceptive trade practices. It seeks damages and to have the court declare the subject Note and Mortgage void under HRS § 480-12[14] and/or the prior HRS § 454-8.[15] Doc. No. 128, Fourth AC ¶ 85. Specifically as to Wells Fargo, however, Count Ten alleges only that (1) Wells Fargo "failed to comply with the terms and conditions of the mortgage loan commitment made by Defendant Chad Cotton," *id.* ¶ 77, and (2)

---

[14] HRS § 480-12 provides that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity."

[15] Before its repeal effective January 1, 2011, HRS § 454-8 (1993) provided in pertinent part that "[a]ny contract entered into by any person with any unlicensed mortgage broker or solicitor shall be void and unenforceable." *See Au v. Republic State Mortg. Co.*, 2011 WL 3422780, at *5-6 (D. Haw. Aug. 4, 2011) (concluding that § 454-8 provides a potential cause of action for the present transaction which occurred prior to § 454-8's repeal).

28

Wells Fargo is liable for treble damages under HRS Ch. 480, apparently for its "non-disclosure and concealment" of a pooling and service agreement that was "intentionally intended to conceal the identity of the mortgage loan company" as exemplified by an assignment that was not recorded until January 2012. *Id.* ¶¶ 83, 85.

These allegations fail to state a claim against Wells Fargo. Again, Wells Fargo is the current holder of the Note and Mortgage. It was not involved in "the terms and conditions of the mortgage loan commitment." *Id.* ¶ 77. And, as an assignee of the Note and Mortgage, Wells Fargo cannot be liable for damages under § 480-2 that might have been caused by prior assignors. *See, e.g.*, *Young v. Bank of N.Y. Mellon*, --- F. Supp. 2d ----, 2012 WL 262640, at *8 (D. Haw. Jan. 30, 2012) (reiterating that an assignee cannot be liable for unfair or deceptive acts that may have occurred when loan was consummated, and that "§ 480-2 liability [for damages] does not attach 'merely because one is an assignee.'") (quoting *Araki v. Bank of Am.*, 2010 WL 5625970, at *6 (D. Haw. Dec. 14, 2010)). Furthermore, Plaintiff has not explained how Wells Fargo could have committed an unfair or deceptive act simply by failing to disclose that it was assigned the Note as part of a PSA in April 2007, or by only having been assigned the Mortgage in January of 2012. Properly executed, the use of pooling agreements in the loan securitization

process is not inherently unfair or deceptive.  *See, e.g.*, *Menashe*, 2012 WL 397437, at *18 (citing numerous cases rejecting that securitization of mortgage loan provides mortgagor a cause of action); *Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 898 (D. Haw. 2011) (same).

Thus, Count Ten remains as to Wells Fargo only to the extent Wells Fargo's presence is necessary if the court proceeds to address Count Ten's allegations that the subject Note and Mortgage are void under HRS § 480-12 and/or the prior HRS § 454-8.  Doc. No. 128, Fourth AC ¶ 85.  *See generally Dawavendewa v. Salt River Project*, 276 F.3d 1150, 1157 (9th Cir. 2002) ("[A] party to a contract is necessary [and] indispensable to litigation seeking to decimate that contract.").  That question remains open, and to that extent Wells Fargo is a properly-named Defendant in Count Ten.

In sum, Count Ten is DISMISSED in part as to Wells Fargo.

### 5. Count Eleven (*Fair Debt Collection Practices Act*) Fails to State a Claim against Wells Fargo

Count Eleven alleges, in conclusory fashion, that Wells Fargo is a "debt collector" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(a).  Doc. No. 128, Fourth AC ¶ 89.  It alleges that Wells Fargo recorded the January 4, 2012 assignment by Sand Canyon of the subject Mortgage "for the purpose of having standing in the event of a foreclosure

on the mortgage and against Plaintiff Au," *id.* ¶ 88, and that Wells Fargo "failed to communicate with Plaintiff Au as a debt collector, and . . . violated the provisions of the FDCPA." *Id.* ¶ 90. It thus seeks damages and equitable relief for violations of the FDCPA.

The FDCPA defines a "debt collector" as:

> . . . any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include --

> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

. . .

> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6). That is, a "debt collector" is "one who collects consumer debts owed *to another*." *Valle v. JP Morgan Chase Bank, N.A.*, 2012 WL 1205635, at *7 (S.D. Cal. April 11, 2012) (emphasis added). "The term does not include any person who collects any debt owed or due to the extent such activity concerns a debt which 'was originated by such person' or 'was not in default at the time it was obtained by such person.'" *Id.* (citing 15 U.S.C. §§ 1692a(6)(F)(ii) & (iii)). It "does not include the consumer's creditors, a mortgage servicing company, or any assignee of a debt, so long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

Thus, "courts across the country have held that mortgage companies are not debt collectors liable under the FDCPA." *Bank of N.Y. Mellon v. Sakala*, 2012 WL 1424665, at *6 (D. Haw. Apr. 24, 2012) (citing cases); *see also*, *e.g.*, *Fed*

*Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *8 (D. Haw. Feb. 23, 2012)

("The FDCPA applies to those who collect debts on behalf of another; it does not

encompass creditors who are collecting their own past due accounts.") (quoting

*Lyons v. Bank of Am., N.A.*, 2011 WL 3607608, at *12 (N.D. Cal. Aug. 15, 2011)).

Applying these rules, Wells Fargo is not a "debt collector." Wells

Fargo was not collecting debts of another, and the Fourth AC does not allege that

the Mortgage debt is in default, much less that the Mortgage was in default when it

was assigned to Wells Fargo. Indeed, there are no allegations that Wells Fargo was

collecting a debt at all. (At most, the Fourth AC alleges that AHMSI -- not Wells

Fargo -- "threatened foreclosure, alleging that Plaintiff . . . was not in good

standing on the mortgage and promissory note[.]") Doc. No. 128, Fourth AC ¶ 88.

Even assuming the Mortgage was assigned to Wells Fargo "for the purpose of

having standing in the event of a foreclosure on the mortgage and against Plaintiff

Au," Doc. No. 128, Fourth AC ¶ 88, such an assignment (or a recording of such an

assignment) does not necessarily make one a "debt collector." *See Kalnoki v. First*

*Am. Loanstar Tr. Servs. LLC*, 2012 WL 1143778, at *2 (E.D. Cal. Apr. 4, 2012)

(rejecting allegations that Wells Fargo was a debt collector because it was not the

original lender, but rather a substitute lender).

In any event, an FDCPA claim also fails because the January 2012

timing of the assignment between Sand Canyon and Wells Fargo (or recording of the assignment) does not implicate the FDCPA. *See Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 942 (N.D. Ohio 2009) (reasoning that "[t]he timing of the recordings [is] not indicative of a violation of the FDCPA" and that "evidence that the assignment was not recorded prior to the filing of a foreclosure action in state court does not establish a violation of the FDCPA"). Such preliminary activities by Wells Fargo are not communications with Plaintiff regarding collection of a debt, and do not constitute "debt collecting" within the meaning of the FDCPA. *See Gonzalez v. CNA Foreclosure Serv., Inc.*, 2011 WL 2580681, at *5 (S.D. Cal. June 29, 2011) (rejecting FDCPA claim, in part because sending pre-foreclosure notices did not "seek to collect a debt"); *Roman v. Northwest Trustee Servs., Inc.*, 2010 WL 5146593, at *3 (W.D. Wash. Dec. 13, 2010) (mailing notice of default not debt collecting under the FDCPA); *cf. Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998) ("A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt[.]").

Count Eleven is DISMISSED as to Wells Fargo.

### 6. *Count Twelve ("Holder in Due Course") Fails to State a Claim as to Wells Fargo*

In Count Twelve, Plaintiff alleges that Wells Fargo is not a holder in

due course pursuant to HRS § 490:3-302 because, among other reasons, (1) Wells Fargo knew or should have known that RSMC was not a licensed mortgage broker in April 2007, Doc. No. 128, Fourth AC ¶ 94A; (2) the April 2007 PSA between Sand Canyon and Wells Fargo was not complied with, *id.* ¶ 94B; (3) the Note was "not delivered or transferred" by Sand Canyon to Wells Fargo, *id.* ¶ 94D; and (4) the assignment of Mortgage was not recorded until January 4, 2012 "to conceal the [PSA]" and "for the intended purpose of qualifying [Wells Fargo] as a bona fide purchaser for value and a holder in due course, with full knowledge that [RSMC] was not licensed to make residential mortgage loans on February 2, 2007." *Id.* ¶ 94E. Count Twelve states that Defendants "are precluded from foreclosure on the subject property, and against Plaintiff Ronald Au, and pursuant to HRS 454-8, the mortgage and promissory note are void and unenforceable[.]" *Id.* ¶ 95.

Nevertheless, whether or not any Defendant is a holder in due course, Count Twelve fails to state a claim -- HRS § 490:3-302 does not provide a cause of action for "holder in due course."[16] Rather, asserting that Wells Fargo is not a

---

[16]  Section 490:3-302 provides in part:

(a) Subject to subsection (c) and section 490:3-106(d), "holder in due course" means the holder of an instrument if:
    (1) The instrument when issued or negotiated to the holder does not bear

(continued...)

holder in due course (or that the Note is void and unenforceable) is a potential affirmative defense to a foreclosure action. *See, e.g.*, *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *5 & n.5 (D. Haw. Dec. 20, 2010). It is not an independent claim, and thus fails to state a claim. At most, Count Twelve might be construed as a claim for declaratory relief, seeking a declaration that the Note and/or Mortgage are void under the former HRS § 454-8 and/or HRS § 480-12. So construed, however, Count Twelve duplicates relief sought in Counts Four (violation of HRS Ch. 454) and Ten (violation of HRS Ch. 480) and is therefore unnecessary.

Accordingly, Count Twelve is DISMISSED as to Wells Fargo.

## C. Claims Against Sand Canyon

To reiterate, Sand Canyon is an intermediate holder of the Note and Mortgage. The Fourth AC alleges that on February 8, 2007 RSMC assigned "the promissory note <u>and</u> the mortgage to [Sand Canyon]." Doc. No. 128, Fourth

---

[16](...continued)
such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 490:3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 490:3-305(a).

AC ¶ 12.  It further alleges that Sand Canyon assigned "the mortgage and promissory note" to Wells Fargo on April 1, 2007, "under the Pooling and Servicing Agreement Dated April 1, 2007."  *Id.* ¶ 29A.  And it alleges that "the purported assignment of [Sand Canyon] of the mortgage and promissory note to [Wells Fargo] was not recorded . . . until January 4, 2012."  *Id.* ¶ 29B (referring to Ex. G of the Fourth AC).[17]

Sand Canyon has moved to dismiss all claims Plaintiff asserts against it in the Fourth AC.  The court has already dismissed Counts Six, Seven, Eight, Eleven, and Twelve -- to the extent they are alleged against any Defendant other than Wells Fargo -- because they exceed the scope of the court's March 8, 2012 Order.  Counts Two and Nine make no allegations against Sand Canyon. Accordingly, the court addresses Counts One, Three, Four, Five, and Ten as to Sand Canyon.

### 1.    *Count One (Breach of Contract)Fails to State a Claim Against Sand Canyon*

Previously, Count One of the TAC claimed that RSMC and Cotton breached a contract with Plaintiff "by refusing to acknowledge and apply the terms of the agreement that they had orally agreed to, and instead applying the written

---

[17]   As summarized earlier, Exhibit G to the Fourth AC is an assignment of the Mortgage (but not the Note) dated January 4, 2012, and recorded in the Hawaii Bureau of Conveyances on January 12, 2012.  Doc. No. 128-7, Fourth AC Ex. G.

terms of the mortgage," *Au*, 2011 WL 3422780, at *2, or otherwise by failing to respond to Plaintiff's requests. *See* Doc. No. 84, TAC ¶¶ 6-13. The Fourth AC added Sand Canyon as a Defendant to Count One, making new allegations that "[Sand Canyon] was the lender of the mortgage and promissory note executed on February 2, 2007, by Plaintiff Au," and "on February 8, 2007, [Sand Canyon] never disclosed to Plaintiff Au, that [Sand Canyon] was the holder of the mortgage and promissory note[.]" Doc. No. 128, Fourth AC ¶ 16. It then alleges that Sand Canyon "was in privity of contract with Plaintiff Au, under the mortgage and promissory note." *Id.* (These new allegations appear to conflict with other parts of the Fourth AC indicating that RSMC assigned the Note and Mortgage to Sand Canyon. *Id.* ¶ 29A.)

    As with the addition of new Counts, adding these new factual allegations to an existing Count against Sand Canyon exceeds the scope of the court's March 8, 2012 Order. The court specifically only authorized Plaintiff to add Wells Fargo as a Defendant, and to revise the TACs allegations of misrepresentation, RESPA violations, and unfair and deceptive trade practices. Thus, pursuant to Federal Rule of Civil Procedure 12(f), the court STRIKES these new allegations made against Sand Canyon for breach of contract. *See, e.g.*, *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 557-58 (D. Haw. 1998)

(striking, pursuant to Rule 12(f), from an amended pleading new allegations that disregarded court's prior order); *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 4285006, at \*3 (N.D. Cal. Oct. 22, 2010) ("[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken.") (citations omitted).

     Plaintiff justifies these new allegations against Sand Canyon by asserting that he "has learned that the loan was a 'table loan' . . . and in this case the funding was actually provided by [Sand Canyon], and [RSMC] was used as the intermediary lender." Doc. No. 151, Pl.'s Opp'n at 7. He explains that "[m]ore recently, [Sand Canyon] provided correspondence that it was really the Funding Group, Inc., and the mortgage broker, William Margiotta . . . was the mortgage broker in charge of the loan." *Id.* "For this reason, Plaintiff has alleged that [Sand Canyon] is equally responsible for the breach of contract." *Id.* But these arguments do not change that the court gave specific conditions in granting leave to file the Fourth AC. Indeed, by these arguments, Plaintiff thus admits that he has exceeded the scope of the permission he was given to amend the TAC. The new allegations are stricken. Without the new allegations against Sand Canyon, Count One fails to state a claim against Sand Canyon for breach of contract. The court

therefore DISMISSES Count One as to Sand Canyon.  As with other stricken

allegations, if Plaintiff believes, after good faith investigation into the facts and

law, that new information provides a plausible basis for alleging that Sand Canyon

breached a contract, he must first follow Rule 15's procedures and seek further

leave to amend.

> **2.**      ***Count Three (Misrepresentation)Fails to State a Claim Against Sand Canyon***

Next, as analyzed above as to Wells Fargo and AHMSI, Count Three

alleges that Sand Canyon is liable for negligent or intentional misrepresentation by

failing to disclose that "the mortgage and promissory note from [RSMC] after

being assigned to [Sand Canyon], on February 8, 2007, was assigned to . . . [Wells

Fargo] under the Pooling and Servicing Agreement [d]ated April 1, 2007."  Doc.

No. 128, Fourth AC  ¶ 29A.  It further alleges that Sand Canyon committed

misrepresentation by not disclosing the "purported assignment of the mortgage and

promissory note by [Sand Canyon] to [Wells Fargo], on or about April 1, 2007"

and not disclosing the "purported assignment of [Sand Canyon] of the mortgage

and promissory note to [Wells Fargo] . . . until January 4, 2012."  *Id.* ¶ 29B.  It also

alleges that it was a "material nondisclosure" not to disclose those assignments

when Sand Canyon "had full knowledge that [RSMC] was not licensed in the State

of Hawaii under HRS 454[.]"  *Id.* ¶ 29D.

These allegations fail to state a claim against Sand Canyon for the same reasons they fail as to Wells Fargo and AHMSI: Count Three does not allege that Sand Canyon made *any* affirmative representations. *See, e.g.*, *Blair*, 95 Haw. at 270, 21 P.3d at 472 (requiring supplying of false information to state a claim for misrepresentation). That is, it would not constitute negligent or intentional misrepresentation by Sand Canyon, even assuming that Sand Canyon failed to disclose to Plaintiff either (1) the February 2007 assignment of the Note by RSMC to Sand Canyon, (2) the April 1, 2007 assignment of the Note (and/or Mortgage, as alleged) from Sand Canyon to Wells Fargo, or (3) the January 2012 assignment of the Mortgage from Sand Canyon to Wells Fargo, and/or January 12, 2012 recording of such an assignment. Count Three is DISMISSED as to Sand Canyon.

### 3. *Count Four (Violations of HRS Ch. 454) Fails as Against Sand Canyon*

Count Four alleges that RSMC, Cotton, and Sand Canyon violated HRS Ch. 454 because, among other allegations, RSMC was not licensed, or that it "represented that . . . [it] was exempt from obtaining a license." Doc. No. 128, Fourth AC ¶¶ 32, 34. It seeks, among other relief, to void the Note and Mortgage under the prior HRS § 484-8. Sand Canyon had previously been named in Count Four of the TAC, and would have been a proper Defendant as an alleged holder of the Note and/or Mortgage in a claim seeking to void the Note and Mortgage.

But Count Four now names *Wells Fargo* as the current holder of both the Note and Mortgage, but continues to name Sand Canyon as a Defendant in Count Four. Instead, Count Four has (improperly and confusingly) added new factual allegations against Sand Canyon -- and appears to change theories -- again based on the purported discovery that the Funding Group and William Margiotta were the actual mortgage originator and broker, and that Sand Canyon was the actual lender. *See id.* ¶¶ 33-36.

As with other Counts, Plaintiff has improperly added these new factual allegations by exceeding the scope of the court's March 8, 2012 Order. Thus, the court STRIKES these new allegations from Count Four. *See, e.g.*, *Wailua Assocs.*, 183 F.R.D. at 557-58; *DeLeon*, 2010 WL 4285006, at *3. Without these allegations against Sand Canyon, Sand Canyon is an intermediary holder, having been assigned the Note and Mortgage on February 8, 2007, and having re-assigned the Note and Mortgage to Wells Fargo on April 1, 2007 and/or January 4, 2012. As Sand Canyon is neither the loan originator nor current holder, Count Four fails to state a claim against it under HRS Ch. 454 or HRS § 454-8. Accordingly, Count Four is DISMISSED as to Sand Canyon.

///

///

**4.     *Count Five (violations of TILA) Fails to State a Claim as to Sand Canyon***

Count Five asserts violations of TILA against RSMC, Cotton, and Sand Canyon.  Doc. No. 128, Fourth AC ¶¶ 37-38.  It seeks rescission of the Note and Mortgage, claiming that misrepresentation by RSMC and Cotton is a basis for equitable tolling.  *Id.* ¶ 42.  And it seeks unspecified damages for alleged TILA violations.  *Id.* ¶ 43.  As to Sand Canyon, it bases its claim on allegations that Sand Canyon had TILA disclosure duties as "the 'lender' pursuant to the mortgage and promissory note," *id.* ¶ 38, or that it otherwise had knowledge that Plaintiff was requesting TILA documents from RSMC and AHMSI in 2009 and 2010.  *Id.* ¶ 41.

"TILA allows a plaintiff to seek damages from a 'creditor,' or rescission from an assignee."  *Marzan*, 779 F. Supp. 2d at 1148 (citing 15 U.S.C. §§ 1640 & 1641(c)).  Here, although there might be a question whether Sand Canyon could have been a "creditor" for purposes of TILA, the court need not address this issue because the allegations otherwise fail to state a claim under TILA.

Initially, as the court noted last year in a prior Order in this action, a claim for rescission under TILA is time-barred and not subject to equitable tolling.  *See Au*, 2011 WL 3422780, at *2 n.4.  The Ninth Circuit has subsequently confirmed that equitable tolling is "irrelevant" and that a three-year statute of

repose absolutely bars a TILA rescission claim. *See McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1329-30 (9th Cir. 2012).

As to a TILA claim for damages against Sand Canyon, Count Five appears to assert that Sand Canyon may be liable for failing to respond to various requests Plaintiff made to AHMSI or RSMC in 2009 and 2010. Doc. No. 128, Fourth AC ¶ 41. But the Fourth AC also alleges that Sand Canyon sold and assigned the Note to Wells Fargo in April 2007, *id.* ¶¶ 16, 29A, and thus Sand Canyon could not have had any responsibility for AHMSI's or RSMC's alleged failures to provide TILA documentation in 2009 and 2010.

Accordingly, Count Five is DISMISSED as to Sand Canyon.

### 5. *Count Ten (Violations of HRS Ch. 480) Fails to State a Claim as to Sand Canyon*

As described when analyzing Count Ten as to AHMSI and Wells Fargo, Count Ten alleges (in a confusing manner) a variety of allegedly wrongful acts that Plaintiff claims constitute unfair or deceptive acts or practices under HRS Ch. 480. As to Sand Canyon, Plaintiff's Ch. 480 claims are based on (1) conduct that the court has already determined was not actionable, or (2) Plaintiff's newly-discovered theory that Sand Canyon was the lender and had concomitant contractual duties and under TILA (the allegations of which the court has struck as exceeding the scope of the court's March 8, 2012 Order).

44

For example, Count Ten alleges that Sand Canyon "ha[s] failed to comply with the terms and conditions of the mortgage loan commitment made by [Cotton], Doc. No. 128, Fourth AC ¶ 77. It alleges Sand Canyon violated HRS Ch. 454 "as an unlicensed mortgage broker and solicitor of mortgage loans," *id.* ¶ 77, and violated HRS §§ 454-3.1(1) and (2) (which applied to mortgage brokers and solicitors). *Id.* ¶ 79. And it alleges that Sand Canyon's failure to disclose the February 8, 2007 and April 1, 2007 assignments violated HRS § 454F-17 (which was not effective until July 1, 2010) and thereby violated HRS Ch. 480. *Id.* ¶ 83.

None of these allegations against Sand Canyon could constitute a violation of Chapter 480. Similar to Wells Fargo, Sand Canyon was an assignee of the Note and Mortgage and thus cannot be liable for damages under § 480-2 that might have been caused by prior assignors. *See, e.g.*, *Young*, 2012 WL 262640, at *8; *Araki*, 2010 WL 5625970, at *6. Similarly, Plaintiff has not explained how Sand Canyon could have committed an unfair or deceptive act simply by failing to disclose the assignment of the Note as part of a PSA in April 2007, or by recording the assignment of the Mortgage in January of 2012. *See, e.g.*, *Menashe*, 2012 WL 397437, at *18 (rejecting that securitization of mortgage loan provides mortgagor a cause of action). Finally, to the extent Count Ten states a claim that the Note and Mortgage are void and unenforceable under HRS § 480-12 and/or the prior HRS

§ 454-8, Sand Canyon -- as an intermediary holder only -- is not a necessary party to an action seeking to void the Note and Mortgage.

In short, Count Ten is DISMISSED as to Sand Canyon.

**D.     Summary of Remaining Claims**

Given that the thirty-nine page Fourth AC alleges twelve Counts against five Defendants, and the court has dismissed only some of the Counts, it may help avoid confusion by summarizing the court's understanding of the remaining Counts.

1.     As to RSMC and Cotton:  Counts One, Two, Three, Four, Five, and Ten remain.  Counts Nine and Eleven were not asserted against RSMC or Cotton.  Counts Six, Seven, Eight, and Twelve have been dismissed as to RSMC and Cotton.

2.     As to AHMSI:  Counts Nine (in part) and Ten (in part) remain. Counts One, Two, Four, Five and Eleven were not asserted against AHMSI.  Counts Three, Six, Seven, Eight, and Twelve have been dismissed as to AHMSI.

3.     As to Wells Fargo:  Counts Four, Five, Seven, and Ten (in part) remain.  Counts One, Two, and Nine were not asserted against Wells Fargo.  Counts Three, Six, Eight, Eleven, and Twelve have been

dismissed as to Wells Fargo.

4.     As to Sand Canyon:  No claims remain.

The Fourth AC is verbose and contains extraneous or contradictory allegations.  Despite its lack of clarity, the Fourth AC gives the remaining Defendants sufficient notice of "plausible" claims such that certain Counts as set forth in this Order may proceed past a pleading stage.

The court remains of the view, as indicated in its March 8, 2012 Order, that -- although the Federal Rules of Civil Procedure contemplate that leave to amend "shall be freely given when justice so requires," *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted) -- at some point it becomes appropriate to deny further amendment, especially given Plaintiff's background and experience.  *See, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment").  Plaintiff has had three opportunities to clarify his claims (at least as to AHMSI), and in each instance has managed to create more confusion.

Thus, to reiterate, if Plaintiff truly believes, after good faith inquiry

into the facts and law, that further amendment of the operative Complaint is necessary based upon newly discovered information disclosed in this action, he must first utilize the Rule 15 process. That is, he must first seek leave to file any proposed amended Complaint. He must draft the proposed amended Complaint and clearly explain why it is necessary, how it states a new claim or claims, and what specific new facts led to the necessity of amendment. Any such attempt will be closely scrutinized and only allowed if plausible claims are alleged, and -- given the long procedural history of this action -- only if such amendment would not unduly prejudice opposing parties.

## V.  CONCLUSION

For the foregoing reasons, the Motions to Dismiss [Doc. Nos. 132, 134, & 136] and related Joinder [Doc. No. 153] are GRANTED in PART and DENIED in part.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 30, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Au v. Republic State Mortg. Co. et al.*, Civ. No. 11-00251 JMS/KSC, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss