IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD AU, | CIVIL NO. 11-00251 JMS/KSC |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT |
| vs. | REPUBLIC STATE MORTGAGE COMPANY'S MOTION FOR |
| REPUBLIC STATE MORTGAGE COMPANY; CHAD COTTON; SAND CANYON CORPORATION, f.k.a. OPTION ONE MORTGAGE CORPORATION; HOMEWARD RESIDENTIAL, INC., f.k.a. AMERICAN HOME MORTGAGE SERVICING, INC.; and WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2007-5 ASSET-BACKED CERTIFICATES, SERIES 2007-5, | SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendants. | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT REPUBLIC STATE MORTGAGE COMPANY'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

In this action, pro se Plaintiff Ronald Au ("Plaintiff" or "Au")[1] seeks

---

[1] Plaintiff was a member of the Hawaii Bar from 1963 through 2005, when his license was suspended by the Hawaii State Bar Association.

to void a note and mortgage, as well as to recover damages, resulting from a February 2007 refinancing transaction on real property located at 45-030 Springer Place, Kaneohe, Hawaii (the "subject property").  Defendant Republic State Mortgage Company ("Republic") moves for summary judgment on all claims asserted against it in Plaintiff's Fourth Amended Complaint ("Fourth AC").  Doc. No. 208.  In response, Plaintiff has filed a corresponding Motion for Partial Summary Judgment, seeking summary judgment in his favor against Republic on Counts Three (misrepresentation), Four (violation of Hawaii Revised Statutes ("HRS") Chapter 454), and Five (violation of the Truth in Lending Act ("TILA")).  Doc. No. 220.[2]

The court decides the Motions without an oral hearing under Local Rule 7.2(d).  For the reasons set forth to follow, Republic's Motion is GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion is DENIED.

## II.  BACKGROUND

The parties and the court are well-aware of the background and procedural history of this action, which has resulted in several Orders as to various

---

[2]  Defendants Homeward Residential Inc., f.k.a. American Home Mortgage Servicing, Inc. ("Homeward"), and Wells Fargo Bank, N.A. ("Wells Fargo") filed a substantive joinder in Republic's Motion on December 18, 2012.  Doc. No. 210.  That substantive joinder, however, is moot because Homeward and Wells Fargo have since filed their own Motion for Summary Judgment, which is scheduled for hearing on April 29, 2013.  *See* Doc. No. 245.

Defendants and different versions of Plaintiff's Complaint.  *See Au v. Republic State Mortg. Co.*, 2011 WL 3422780 (D. Haw. Aug. 4, 2011) (granting in part Republic's Motion to Dismiss First Amended Complaint) ("*Au I*"); *Au v. Republic State Mortg. Co.*, 2012 WL 760316 (D. Haw. Mar. 8, 2012) (granting Defendant Homeward Residential Inc.'s ("Homeward") Motion to Dismiss Counts Three and Five of the Third Amended Complaint) ("*Au II*"); *Au v. Republic State Mortg. Co.*, 2012 WL 3113147 (D. Haw. July 31, 2012) (granting in part Motions to Dismiss the Fourth Amended Complaint) ("*Au III*"); *Au v. Republic State Mortg. Co.*, 2012 WL 6726384 (D. Haw. Dec. 27, 2012) (denying Plaintiff's Motion to File Fifth Amended Complaint) ("*Au IV*").

The present Motions concern claims against Republic only, and thus the court reiterates only the relevant background as necessary to resolve claims as to Republic.  The court begins by summarizing the allegations of the Fourth AC regarding Republic.  Where appropriate, the court refers to the evidentiary record -- construed in the light most favorable to Plaintiff -- and notes where those allegations are supported by evidence (or points out if the record lacks such evidence).

The action arises from a February 2, 2007 refinancing transaction on the subject property.  During the transaction, Plaintiff dealt with Defendant Chad

Cotton ("Cotton"),[3] who was, or represented himself to be, associated with Republic.  Doc. No. 128, Fourth AC ¶ 3.  Cotton informed Plaintiff that Republic could refinance the subject property for $680,000 at a rate of 7.5% per annum as long as the loan closed by the first week of February 2007.  *Id.* ¶ 9.[4]  Although Plaintiff allegedly was not provided a Good Faith Estimate confirming these terms prior to closing,[5] Plaintiff did not doubt Cotton because Plaintiff had previously financed other property though Cotton, and he trusted him.  *Id.*; Doc. No. 208-3 at 13, Au. Dep. at 64.

The February 2, 2007 closing documents, all knowingly signed by Au

---

[3]  Cotton has never been served with any version of the Complaint, and Plaintiff was unsuccessful in his attempts to obtain default against him.  *See* Doc. No. 96, Findings and Recommendation to Deny Pl.'s Mot. for Entry of Default; Doc. No. 107, Order Adopting Findings and Recommendation to Deny Pl.'s Mot. for Entry of Default.

[4]  Plaintiff testified at his deposition that he was promised and was expecting an adjustable rate loan with an initial rate of 7.5%.  Doc. No. 208-3 at 8, Au Dep. at 42.

[5]  The record reflects that Au was provided a Truth in Lending Disclosure Statement on January 7, 2007.  Doc. No. 208-3 at 11, Au Dep. at 54-57; *Id.* at 30, Au Dep. Ex.1.  Although nearly illegible, Au asserts (and Republic appears to agree) that it lists an interest rate of 7.1%.  *See* Doc. No. 231-1, Pl.'s Concise Statement of Facts ("CSF") Ex. 1.  Au also executed a Good Faith Estimate on January 11, 2007.  Doc. No. 208-3 at 31, Au Dep. Ex. 2; Doc. No. 231-3, Pl.'s CSF Ex. 3.  That Good Faith Estimate is also nearly illegible, and Au asserts that it gives an interest rate of 9% for a loan of $650,000.  Doc. No. 231, Pl.'s CSF ¶ 3.

The record also contains a Truth in Lending Disclosure Statement, signed by Au on February 2, 2007 (the closing date), for a variable rate loan with an annual percentage rate of 10.821 percent.  Doc. No. 208-3 at 54, Au Dep. Ex. 7.  The Truth in Lending Disclosure Statement also contains an "itemization of amount financed," also signed by Au on February 2, 2007, listing a loan amount of $700,000 (with an amount financed of $682,811.70, and a prepaid finance charge of $17,188.30) at an interest rate of 8.925 percent.  *Id.* at 55.

(as he admits),[6] indicated that the mortgage was for $700,000 at an adjustable

interest rate, initially set at 8.925%, with closing costs of over $19,000.  Doc. No.

128, Fourth AC ¶ 10.[7]  (The closing costs were evidently rolled into the $680,000

principal.)  Plaintiff questioned the figures at the time and called Cotton, but

Cotton represented to Plaintiff by telephone conversation that (1) Republic had

"misunderstood" that there was a loan commitment for 7.5%; and (2) after closing,

Republic would "adjust" or modify the mortgage and promissory note to reflect the

correct interest rate, and rebate certain closing costs.  Allegedly relying on these

---

[6] In this regard, Au testified at his deposition as follows:

Q.  So you signed documents with loan terms that you believed to be incorrect
because Mr. Cotton asked you to do it in order to show that you were willing to
go through with the loan?
. . . .
A.  That's correct.  He told me that if you want to get a seven and a half percent
rate, you need to sign today, Ron, because it's not locked in, I cannot guarant[ee]
you're going to get that rate.
        And I told him basically, I said, Chad, I'm trusting you, okay, you know
I'm trusting you, I've dealt with you, and you're assuring me that I'm going to get
a seven and a half percent rate, etcetera, etcetera.
. . . .
        So based on that, I signed.  That was the understanding I had from Chad,
and as I say, I had no reason to mistrust him because I had a good relationship
with him earlier.

Doc. No. 208-3 at 13, Au. Dep. at 63-64.

[7] *See* Doc. No. 208-3 at 32, Au. Dep. Ex. 3 (Adjustable Rate Note); *id.* at 48 (Adjustable
Rate Rider); *id.* at 38, Au Dep. Ex. 4 (Mortgage); *id.* at 51, Au Dep. Ex. 5 (HUD-1 Settlement
Statement); *id.* at 54, Au Dep. Ex. 7 (TILA Disclosure Statement).  All were signed by Au on
February 2, 2007, and all indicated an initial interest rate of 8.925%, and/or a loan amount of
$700,000, and/or closing costs of over $19,000.

5

representations, Plaintiff proceeded to close escrow. *Id.* Plaintiff alleges that Republic or Cotton or both were not licensed mortgage brokers or solicitors in Hawaii, and therefore the note and mortgage entered into on February 2, 2007 are void and unenforceable under a then-applicable statutory provision, HRS § 454-8.[8] *Id.* ¶ 35.

On February 8, 2007, Republic assigned the note and mortgage to Defendant Sand Canyon Corporation (known at that time as Option One Mortgage Corporation) ("Sand Canyon").[9] *Id.* ¶ 12. Subsequently, Sand Canyon assigned the note to Wells Fargo Bank, N.A. ("Wells Fargo") on April 1, 2007 as part of a loan securitization Pooling and Service Agreement ("PSA"). *Id.* ¶ 29A. The mortgage (not the note) was assigned by Sand Canyon on January 4, 2012 (after this action was filed), and that assignment was recorded in the Hawaii Bureau of Conveyances on January 12, 2012. *Id.* Ex. G.

In March and April 2007, Plaintiff allegedly contacted representatives of Republic, who claimed that Cotton did not represent Republic, but instead was

---

[8] The court has already determined that HRS § 454-8, which was repealed effective January 2, 2011, can apply to the refinancing transaction at issue in this action, which took place in 2007. *See Au I*, 2011 WL 3422780, at *6 ("Plaintiff had a matured right to bring a cause of action for violation of HRS Ch. 454 [in 2007]").

[9] The court has dismissed all claims against Sand Canyon, and denied Plaintiff's request seeking leave to file a Fifth Amended Complaint attempting to state claims against Sand Canyon. *See Au IV*, 2012 WL 6726384, at *3-5.

associated with "the Funding Group."  *Id.* ¶ 11.  He also later contacted the loan servicer at the time, Homeward (then known as American Home Mortgage Servicing, Inc.), but was told to direct his questions regarding the mortgage terms to Republic.  *Id.* ¶ 12.

On February 6, 2009, Plaintiff wrote a letter to Republic and Homeward stating that "I believe that I am entitled to a loan modification in the interest rate and principal that you are assessing monthly."  Doc. No. 208-3 at 60, Au Dep. Ex. 9.  He then explained his version of events, as alleged in the different versions of the Complaint.  *Id.* at 60-61.  He wrote, in part:

> On closing [on February 2, 2007], I first learned that the settlement charges were over $19,000, and the loan was at 8.9%.  This was not what was represented by the representative of Republic State Mortgage.  I immediately called him before signing any documentation.  I was not able to reach him at his number, which I believe to be Texas.  I spoke to a representative of the company where Mr. Cotton is employed, and they advised me that they owned or worked very closely with Republic State Mortgage and that the difference in settlement charges would be rebated to me after closing.  I was further advised that because of their close connection to Republic State Mortgage, that the interest rate would be adjusted and I would receive documents for modification.
> . . . .
> I believe that there has been misrepresentation and fraud by the representative of Republic State Mortgage in soliciting the refinancing through Republic State Mortgage.

> . . . .
> I have been making good faith payments pursuant to the
> loan statement by the loan servicing company, in good
> faith so as not to jeopardize my mortgage.  Pursuant to
> the Federal law, I am demanding a loan modification as
> to the interest rate and to the excessive settlement charges
> that were assessed without prior notice.

*Id.* at 61.

Subsequently, in email communications in 2009 and 2010, Republic

told Plaintiff that it would investigate Plaintiff's file.  Through counsel, Republic

told Plaintiff, among other things, that it "ha[s] ordered the file from storage," that

"the company which has your loan documents bases part of its operations in

[I]ndia," and "we are literally trying to get documents sent to us from India."  Doc.

No. 128, Fourth AC Exs. C & D; Doc. No. 231-12, Pl.'s Opp'n CSF Ex. 12.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of*

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV.  DISCUSSION

**A.**     **Counts One and Two -- Breach of Contract and Promissory Estoppel**

Count One alleges that Republic breached the mortgage contract by refusing to acknowledge and apply the terms that Republic and Au had orally agreed to, and instead applying the written terms of the mortgage.  *See* Doc. No. 128, Fourth AC ¶¶ 7-18.  Count Two, alleging "promissory estoppel," further asserts that Plaintiff relied upon Cotton's and Republic's representations regarding the loan terms, resulting in damages to Plaintiff.  *See id.* ¶¶ 19-27.[10]

Republic argues that these claims are barred by the Statute of Frauds. The court first reiterates and expands its discussion of Hawaii law in this regard, as set forth in *Au I*, 2011 WL 3422780, at *3-4, and then applies those principles to Counts One and Two..

---

[10]  Although there was some question as to whether Cotton was an employee of "the Funding Group" or of Republic, Republic's President testified that Cotton left "the Funding Group" and joined Republic in December 2006 (and left Republic in the fall of 2007).  *See* Doc. No. 224 at 14, McGrath Dep. at 39-40.  The court assumes for purposes of summary judgment that Cotton was an employee and agent of Republic at relevant periods, and that Republic would be responsible for any actions of Cotton within the scope of his employment.

### 1.    *The Statute of Frauds and Restatement (Second) of Contracts § 139*

Under HRS § 656-1:

> No action shall be brought and maintained in any of the
> following cases: . . . (4) Upon any contract for the sale of
> lands, tenements, or hereditaments, or of any interest in
> or concerning them . . . unless the promise, contract, or
> agreement, upon which the action is brought, or some
> memorandum or note thereof, is in writing, and is signed
> by the party to be charged therewith, or by some person
> thereunto by the party in writing lawfully authorized. . . .

*See also Kona Hawaiian Assocs. v. Pac. Group*, 680 F. Supp. 1438, 1451 (D. Haw.

1988) ("Hawaii's statute of frauds requires that any contract for an interest in land

and any authority for the signing party to buy land be in writing.").  Section 656-1

"is substantially the same as the original English Statute of Frauds[,]" which "was

enacted almost 300 years ago to prevent 'many fraudulent practices, which are

commonly endeavored to be upheld by perjury and subornation of perjury.'"

*McIntosh v. Murphy*, 52 Haw. 29, 32-33, 469 P.2d 177, 179 (1970).  The Statute of

Frauds is

> justified on at least three grounds: (1) the Statute still
> serves an evidentiary function thereby lessening the
> danger of perjured testimony (the original rationale);
> (2) the requirement of a writing has a cautionary effect
> which causes reflection by the parties on the importance
> of the agreement; and (3) the writing is an easy way to
> distinguish enforceable contracts from those which are
> not, thus chanelling certain transactions into written

11

form.

*Id.* at 33, 469 P.2d at 179.

The Statute of Frauds does not act as an automatic bar, however, and the court may refuse to apply it where its application would work an injustice. Specifically, *McIntosh* describes the relevant inquiry as follows:

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was forseeable by the promisor.

*Id.* at 36, 469 P.2d at 181 (quoting Restatement (Second) of Contracts § 217A (Supp. Tentative Draft No. 4, 1969, subsequently adopted as Restatement (Second) of Contracts § 139)); *see also Pedrina v. Chun*, 906 F. Supp. 1377, 1418 (D. Haw.

12

1995).

The Restatement (Second) of Contracts § 139, similar to promissory estoppel under Restatement (Second) of Contracts § 90, "states a flexible principle," where enforcement of an oral promise "must be necessary to avoid injustice." Restatement (Second) of Contracts § 139 cmt. b. *See also Hamilton v. Funk*, 66 Haw. 451, 453, 666 P.2d 582, 583 (1983) (reiterating that an oral promise can be enforceable, notwithstanding the Statute of Frauds, "where injustice can be avoided only by enforcement of the promise") (citing *McIntosh*). Under *McIntosh*, § 139 applies to avoid "unconscionable injury." 52 Haw. at 35, 469 P.2d at 180. Courts recognize that § 139 is an equitable remedy to avoid "manifest injustice." *Columbus Trade Exch., Inc. v. AMCA Int'l Corp.*, 763 F. Supp. 946, 954 (S.D. Ohio 1991).

## 2. *Application of HRS § 656-1 and Restatement § 139*

When the court ruled on Republic's prior Motion to Dismiss the First Amended Complaint, the court declined to address whether the Statute of Frauds applies to bar Plaintiff's claims for breach of contract and promissory estoppel. *Au I*, 2011 WL 3422780, at *3-4. Given the First Amended Complaint's allegations, the court could not weigh the applicable factors at that stage because doing so required considering whether, under *McIntosh*, "evidence corroborates the making

13

and terms of the promise, the reasonableness of the action or forbearance, or the extent to which the action or forbearance was foreseeable by Cotton and/or Republic." *Id.* at *4. Now, having considered a full evidentiary record -- and considering all material disputes of fact in favor of Plaintiff -- the court concludes that the Statute of Frauds would not apply to bar Counts One and Two (and that its application would work an "injustice") if the court accepts -- as it must at this stage -- that Plaintiff's testimony is true. That is, if it is true that Cotton and Au both thought the 8.925% figure was incorrect and, instead, intended it to be 7.5%, then the Statute of Frauds does not bar Counts One and Two. Accordingly, the court has no choice but to DENY Republic's Motion in this regard.

Initially, it is uncontested that the alleged oral agreement -- a note and mortgage on the subject property with an initial interest rate of 7.5% -- concerns the transfer of an interest in real property and falls within the express terms of HRS § 656-1. *See, e.g.*, *Northern Trust N.A. v. Wolfe*, 2012 WL 1983339, at *22 (D. Haw. May 31, 2012) ("Wolfe's Mortgage was an agreement concerning the transfer of an interest in land, and therefore the Mortgage was subject to the statute of frauds," such that an "alleged [oral] forebearance agreement is also subject to the statute of frauds."); *Eckerle v. Deutsche Bank Nat'l Trust*, 2011 WL 4971128, at *3 (D. Haw. Oct. 18, 2011) (disregarding an alleged oral loan modification

agreement under § 656-1 because "agreements concerning real estate" must be in writing).

Moreover, in applying Restatement § 139, there are certainly equitable factors weighing heavily in favor of enforcing the Statute of Frauds under the circumstances in this case.  That is, considering factors in *McIntosh*, the record reflects that Plaintiff knew the precise terms of the note and mortgage, as reflected on all relevant closing documents that he signed on February 2, 2007.  Although he claims that Cotton had previously promised different terms (an initial interest rate of 7.5% rather than 8.925%, with lower closing costs), Au nevertheless went forward with the transaction after speaking with Cotton (or another representative of Republic) because he "trusted" Cotton, and believed Republic would lower the rate and refund closing costs.  *See* Doc. No. 208-3 at 13, Au. Dep. at 63-64.  Stated differently, Au knew what he was doing.  Unlike other situations where a note and mortgage might be voided on equitable grounds because of incapacity or undue influence, Au knew he was signing documents that reflected an initial rate of 8.925% with closing costs of over $19,000.[11]

--------

[11] For example, Au testified as follows at his deposition:

Q.  And the Mortgage also contains an Adjustable Rate Rider.  Correct?
A.  Yes.

(continued...)

Moreover, Au practiced law for forty two years (from 1963 to 2005), having had a civil practice involving "business, real estate, some bankruptcy, personal injury, [and] medical malpractice." *Id.* at 3, Au Dep. at 8.  He understands real estate contracts and practiced in areas of "real estate broker or Realtor's liability, enforcement of a contract of sale, agreement of sale or violations of the sale, leases, that kind of thing." *Id.* at 3-4, Au Dep. at 9-10.  He admits that he was "absolutely . . . familiar with the statute of frauds." *Id.* at 28, Au Dep. at 128.  He also has extensive personal experience with purchase, sale, and refinancing of his own properties. *Id.* at 5, Au Dep. at 18-19.[12]  And he

_____

[11](...continued)
Q.  And you signed this document at closing as well?
A.  Yes.
Q.  Did you review it before you signed it?
A.  Briefly I did.
Q.  And the Adjustable Rate Rider states that the initial interest rate is 8.925 percent.  Correct?
A.  I saw that.  I saw it on the note, and that's why I called Chad [Cotton].

Doc. No. 208-3 at 18, Au Dep. at 88-89.

[12]  This exchange took place at Au's deposition:

Q.  How many other times have you attended a closing as a purchaser because you were on title?

A.  I would guess between five and ten times.  That's my guesstimate.

Q.  How many times would you have attended a real estate closing as a seller because you were on title and you were selling the property?

(continued...)

admitted signing a mortgage here "that contains a term that says this security instrument may be modified or amended only by an agreement in writing," *id.* at 17-18, Au. Dep. at 85-86, knowing he had nothing in writing confirming that it would be modified.  *Id.*; *see also Columbus Trade*, 763 F. Supp. at 955 (reasoning that Restatement (Second) of Contracts § 139 permits a court "to consider the reasonability and the foreseeability of reliance of the parties, and the fact that the parties involved are individuals educated in business practices.").  And, at least initially, he did little to attempt to enforce the alleged oral promise -- indeed, some of his post-closing acts, such a making payments on a note with an 8.925% rate, appear to be inconsistent with such a promise.  *See, e.g.*, Doc. No. 208-3 at 21, Au Dep. at 99.

But the court cannot weigh the evidence in this manner at a summary judgment stage.  It must accept Au's testimony as true for purposes of summary

---

[12](...continued)
A.  This is an estimate.  I would say probably around five.

Q.  How many times in addition to the subject matter property and your primary residence have you taken out a loan . . . [t]o buy or to refinance or to take out equity for any reason you took a loan out on a property on which you were on title[?]

A.  Anywhere between five to ten times.

Doc. No. 208-3 at 5, Au Dep. at 18-19.

judgment and construe it in the light most favorable to him.  Doing so, the court

assumes that Au and Cotton (on behalf of Republic) agreed that the 8.925% figure

was incorrect -- the correct initial rate should be 7.5% -- and that Republic would

change the terms of the note and mortgage.  If that were not true, it would clearly

be unreasonable for Au to believe the written terms of note and mortgage would

not be enforceable or could be changed without a formal modification, and the

Statute of Frauds would apply.  But, accepting his testimony as true, it could be a

"manifest injustice" under Restatement § 139 not to enforce such an oral promise

-- the lender would be unjustly enriched by a note with (at least initially) a higher

rate than promised, and Au would be damaged by paying a higher rate than agreed.

*McIntosh*, 52 Haw. at 35, 469 P.2d at 180.

It follows that the court should deny Republic's Motion as to Count

Two, asserting promissory estoppel.  *See, e.g.*, *Gonsalves v. Nissan Motor Corp. in*

*Hawaii, Ltd.*, 100 Haw. 149, 164, 58 P.3d 1196, 1211 (2002) (explaining that,

under promissory estoppel, "[a] promise which the promisor should reasonably

expect to induce action or forbearance on the part of the promisee or a third person

and which does induce such action or forbearance is binding if injustice can be

avoided only by enforcement of the promise").  That is, accepting his testimony

and construing it in the light most favorable to him, Au could plausibly meet the

necessary elements of "reasonable reliance," and that "enforcement of the promise is necessary to avoid injustice." *Id*. at 165, 58 P.3d at 1212 (citation omitted).

**B.      Count Three -- Intentional and Negligent Misrepresentation**

Next, Republic argues that it is entitled to summary judgment as to Count Three, which alleges "intentional or negligent misrepresentation" by Cotton and Republic for (1) misrepresenting the terms of the note and mortgage at issue, (2) misrepresenting the closing costs and fees for the subject loan, (3) misrepresenting that Republic would "amend or modify the mortgage to reflect an interest rate of 7.5% and rebate settlement charges," and (4) misrepresenting that Cotton or Republic was a licensed mortgage broker in the State of Hawaii. Doc. No. 128, Fourth AC ¶¶ 28A-28I.

"The elements of intentional misrepresentation are: (1) a false statement; (2) knowledge of the statement's falsity; (3) intent to induce reliance; (4) justifiable reliance; [and] (5) resulting damages." *Benoist v. U.S. Bank Nat'l Ass'n*, 2012 WL 5839943, at *6 (D. Haw. Nov. 15, 2012) (quoting *Boskoff v. Yano*, 57 F. Supp. 2d 994, 1002 (D. Haw. 1998)). *See also, e.g.*, *Martin v. GMAC Mortg. Corp.*, 2011 WL 6002617, at *8 (D. Haw. Nov. 30, 2012) ("Under Hawaii law, the elements of a fraudulent or intentional misrepresentation claim are: '(1) false representations made by the defendant; (2) with knowledge of their falsity (or

without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance.'") (quoting *Miyashiro v. Roehrig, Roehrig, Wilson & Hara*, 122 Haw. 461, 482-83, 228 P.3d 341, 362-62 (Haw. App. 2010)).

"A negligent misrepresentation claim is 'virtually identical' to an intentional misrepresentation claim, except that the second prong does not require knowledge of the falsity, but rather, the absence of a reasonable ground for believing it to be true." *Benoist*, 2012 WL 5839943, at *6 n.8 (citing *Boskoff*, 57 F. Supp. 2d at 1002). "Hawaii courts have specifically stated that justifiable reliance is an element of the tort of negligent misrepresentation." *Honolulu Disposal Serv., Inc. v. Am. Ben. Plan Adm'rs, Inc.*, 433 F. Supp. 2d 1181, 1193 (D. Haw. 2006); *see also Lindsey v. CUNA Mut. Ins. Soc.*, 2010 WL 4397036, at *3 (D. Haw. Oct. 29, 2010).

Republic argues that Au's reliance on any misrepresentation (assuming Cotton made false statements to Au regarding the initial interest rate and closing costs) was not reasonable or justifiable. But for the same reasons that the court must conclude that there is a genuine issue of material fact as to whether it was reasonable for Au to rely on Cotton's oral statements to avoid the Statute of Frauds, there is also an issue of fact here. True, Plaintiff -- an experienced

attorney, knowledgeable about real estate transactions and the Statute of Frauds --

knowingly executed binding legal documents that fully disclosed the interest rate

and closing costs.  He was aware of (and inquired about) the initial interest rate,

and that he was entering into a variable rate loan.  But if it is true that Au and

Cotton (on behalf of Republic) intended the terms to be different than what was

written, then there could be reasonable reliance.

Republic argues that Cotton's promises concern future events and thus

cannot form the basis of a misrepresentation claim.  *See, e.g.*, *Stanton v. Bank of*

*Am., N.A.*, 834 F. Supp. 2d 1061, 1085 (D. Haw. 2011) ("Under Hawaii law, the

false representation forming the basis of a fraud claim 'must relate to a past or

existing material fact and not the occurrence of a future event.'") (quoting *Joy A.*

*McElroy, M.D., Inc. v. Maryl Grp., Inc.*, 107 Haw. 423, 433, 114 P.3d 929, 939

(App. 2005)) (italics omitted).  But, construing the evidence in favor of Plaintiff,

Cotton's representation actually concerned the existing terms of the note and

mortgage -- not an agreement to enter into a future contract, but a representation

that the note was wrong.

In short, the court has no choice but to conclude that there is at least

some basis for a claim of intentional or negligent misrepresentation.  Republic's

Motion for Summary Judgment as to Count Three is DENIED.  Given the question

of material fact, however, Plaintiff's corresponding Motion for Partial Summary

Judgment is also DENIED.

## C.     Count Four -- Unlicensed Brokering Under the Former HRS Ch. 454

In Count Four, Au alleges that the February 2, 2007 note and

mortgage are void and unenforceable because Republic violated the former HRS

§ 454-8.  Doc. No. 128, Fourth AC at 15-17.  Prior to its repeal, effective on

January 1, 2011, HRS Chapter 454 regulated "mortgage brokers and solicitors" in

Hawaii.[13]  HRS § 454-8 provided, in part, that "[a]ny contract entered into by any

person with any unlicensed mortgage broker or solicitor shall be void and

unenforceable."  Au contends that the note and mortgage are void and

unenforceable because Republic (or Cotton on its behalf) acted as a mortgage

broker or solicitor, but was not licensed in Hawaii.  Doc. No. 128, Fourth AC

¶¶ 32-33; Doc. No. 220, Pl.'s Mot. at 4-14.

---

[13]  As noted above, the court has previously concluded that, although HRS Ch. 454 has been repealed, it still applies in this action.  *See Au I*, 2011 WL 3422780, at *6.  To reiterate, HRS Chapter 454 was replaced by the Secure and Fair Enforcement for Mortgage Licensing Act, HRS Chapter 454F, effective July 1, 2010.  The repeal of Chapter 454 took effect on January 1, 2011.  *See* 2010 Haw. Sess. Laws Ch. 84, § 38.  The present action arose in 2007 and Au asserted a Chapter 454 claim on May 25, 2010, in his First Amended Complaint.  The court determined in its earlier ruling that the repeal did not affect Au's accrued right under Chapter 454.  The court thus analyzes the prior statutory provisions.  *See* 2010 Haw. Sess. Laws Ch. 84 § 35 ("This Act, including the repeal of chapter 454, Hawaii Revised Statutes, . . . does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date.").

In this regard, Au indeed has undisputed evidence that Republic was not a licensed "mortgage broker or solicitor" in Hawaii in 2007. *See* Doc. No. 221-16, Suzuki Decl. ¶ 4. Au relies on *Beneficial Hawaii, Inc. v. Kida*, 96 Haw. 289, 30 P.3d 895 (2001), which held, among other matters, that "HRS § 454-8 must be interpreted to invalidate . . . those contracts into which unlicensed mortgage brokers enter in their capacity as mortgage brokers within the meaning of HRS § 454-1," *id*. at 309, 30 P.3d at 915, "including a note and mortgage designating the broker as the creditor as a result of the broker's brokering activities[.]" *Id*. at 302, 30 P.3d at 918.

Republic, however, is entitled to summary judgment on Count Four because it was exempt from Chapter 454 (and thus Au's corresponding Motion for Partial Summary Judgment lacks merit). Republic relies on *Skaggs v. HSBC Bank USA, N.A.*, 2011 WL 3861373 (D. Haw. Aug. 31, 2011), in which this court faced the same contention and held that the broker/lender was exempt from § 454-8 because it was a "foreign lender." *Id*. at *6-7. *Skaggs* recognized that

> [u]nder HRS § 454-1 . . . a mortgage broker "means a person *not exempt under section 454-2* who for compensation or gain . . . makes, negotiates, acquires, or offers to make, negotiate, or acquire a mortgage loan on behalf of a borrower seeking a mortgage loan." (Emphasis added.) In turn, § 454-2(6) provided that chapter 454 "does not apply to [a] . . . [f]oreign lender as

23

defined in section 207-11." And HRS § 207-11(C) defines a "foreign lender" as, among other things, "a lender approved by the Secretary of the United States Department of Housing and Urban Development for participation in any mortgage insurance program under the National Housing Act."

2011 WL 3861373, at *7. The broker/lender in *Skaggs* was exempt from Chapter 454 because it was "approved by the Federal Housing Administration ("FHA") as an 'FHA-approved mortgagee,'" and the "FHA administers loans under the National Housing Act." *Id.*

As in *Skaggs*, Republic has produced undisputed evidence that it was such a "foreign lender" in February 2007. Specifically, a November 8, 2012 Declaration from Jacqueline Jones, an official with the Office of Lender Activities and Program Compliance of the U.S. Department of Housing and Urban Development, confirms that Republic was an "FHA-approved mortgagee" from February 14, 2000 to the present. Doc. No. 208-4, Jones Aff. ¶¶ 2-3.[14] As recognized in *Skaggs*, the FHA administers loans under the National Housing Act. *Skaggs*, 2011 WL 3861373, at *7 (citing 12 U.S.C. § 1708(a)). As in *Skaggs*, then, Republic falls "squarely within the definition of a 'foreign lender' under HRS § 207-11(C), and was therefore exempt from HRS Chapter 454." *Id.* There is no

---

[14] Indeed, this is the same HUD official whose declaration was sufficient in *Skaggs*. *See* 2011 WL 3861373, at *7.

statutory basis to void the February 2, 2007 note and mortgage.[15]

In response, Au argues that Republic was not exempt (or that there is a disputed issue of material fact as to its status) because it executed a lease in 2007 for an "office" at 500 Ala Moana Blvd., Suite 400, Honolulu, Hawaii (which is a former address of "the Funding Group" -- apparently a former employer of Cotton).[16] Au argues that, because Republic "maintained a place of business" in Hawaii in 2007, it failed to comply with HRS § 207-12 and was thus not a "foreign lender." *See* Doc. No. 230, Pl.'s Opp'n at 14; Doc. No. 220, Pl.'s Mot. at 4-14. Au's response, however, is irrelevant and misplaced.

Section 207-12 provides, in part:

A foreign lender which (1) does not maintain a place of business in this State, (2) conducts its principal activities outside this State, and (3) complies with this part, does not by engaging in this State in any or all of the activities specified in section 207-13 [which includes making

---

[15] Au complains that Republic, which is not disputing that Cotton was its employee in 2007, has not provided Cotton's W-2 forms. Doc. No. 235, Pl.'s Reply at 4-5. He contends the forms are relevant because, if Cotton was *not* employed by Republic, then "Cotton would not qualify for any exemption or immunity from licensure under HRS 454." *Id.* at 5. But Cotton has never been served with any version of the Complaint, and the Fourth AC alleges that "[a]t all times relevant hereto [Cotton] was a resident of Texas, and an agent or employee or representative of [Republic] and [Sand Canyon]." Doc. No. 128, Fourth AC ¶ 3. The relevant question is whether Republic was a "foreign lender" under HRS § 207-11(C).

[16] According to Republic, the Ala Moana address is a "virtual office," used for marketing and mail service. Doc. 229, Def.'s Opp'n at 14; Doc. No. 224-2 at 13, McGrath Dep. V.2 at 11-13.

loans], violate the laws of this State relating to doing business or doing a banking, trust, or insurance business, or become subject to chapter 412, 414, or 431, or become subject to any taxation which would otherwise be imposed for doing business in or doing a banking, trust, or insurance business in, or having gross income or receipts from sources in, property in, or the conduct of any activity in, this State, or become subject to any taxation under chapter 235, 237, or 241, and no income or receipts of any foreign lender arising out of any of the activities specified in the following section shall constitute income from sources in, property in, or activities conducted in this State for the purposes of any tax imposed by this State[.]

Under § 207-12, Au apparently believes that if Republic is a foreign lender and *did* "maintain a place of business" in Hawaii (and conducts principal activities outside Hawaii and makes loans in Hawaii), then it "violate[s] the laws of this State relating to doing business" in Hawaii. *See* Doc. No. 220, Pl.'s Mot. at 4-14.[17] But, even assuming that Au could prove that Republic's lease constituted "maintaining a place of business" in Hawaii, it does not change the fact that Republic was still a "foreign lender" under § 454-2, "as defined in § 207-11." Nowhere does Chapter 454 refer to § 207-12. Indeed, § 207-12 -- which Au claims

---

[17] Au provides evidence that Republic applied for a Certificate of Authority for Foreign Corporation with the Business Registration Division of the Department of Commerce and Consumer Affairs on December 13, 2006. Doc. No. 221-4, Pl.'s CSF Ex. 3. Republic apparently filed for such a certificate after, according to an email from Republic's President, "realiz[ing] that we needed to have a certificate of existence in Hawaii," Doc. No. 221-6, Pl.'s CSF Ex. 5, before soliciting mortgages in Hawaii.

was violated -- applies only to a "foreign lender" in the first place.  Au's position

assumes too much.

That is, even if there are questions as to whether Republic could have

violated a law "related to doing business" (if it indeed "maintained a place of

business" in Hawaii), such questions are not material -- the answer does not change

the fact that Republic was a "foreign lender" for purposes of Chapter 454 (which is

the relevant question).  Whether Republic properly registered as a foreign

corporation has no bearing on whether it was a "foreign lender" for purposes of

HRS § 454-2.  In short, Au raises a proverbial red herring.

Accordingly, the court GRANTS Republic's Motion for Summary

Judgment as to Count Four, and DENIES Plaintiff's corresponding Motion for

Partial Summary Judgment.

## D.    Count Five -- Violations of the Truth in Lending Act

Count Five asserts violations of TILA against Republic, Cotton, and

Sand Canyon.  Doc. No. 128, Fourth AC ¶¶ 37-38.  It seeks rescission of the note

and mortgage, claiming that misrepresentation by Republic and Cotton is a basis

for equitable tolling.  *Id.* ¶ 42.  And it seeks unspecified damages for alleged TILA

violations.  *Id.* ¶ 43.  Plaintiff contends that he was not given certain documents

required under TILA.  Doc. No. 220, Pl.'s Mot. at 15-18; Doc. No. 230, Pl.'s

Opp'n at 18-21.  Republic seeks summary judgment, primarily arguing that any

TILA claims are barred by TILA's statute of limitations, and pointing out that

Plaintiff in fact received all required disclosures in compliance with TILA's

regulations as they existed in 2007.

The court has already determined in previous rulings in this case as to

other Defendants that any TILA-based rescission claim is time-barred and not

subject to equitable tolling.  *See Au III*, 2012 WL 3113147, at *17; *Au I*, 2011 WL

3422780, at *2 n.4.[18]  The transaction at issue here took place in February of 2007,

and this action was not filed in state court until March 15, 2011.[19]  A three-year

statute of repose absolutely bars a TILA rescission claim.  *See McOmie-Gray v.*

*Bank of Am. Home Loans*, 667 F.3d 1325, 1329-30 (9th Cir. 2012).

Likewise, any claim for damages under TILA is also barred by a

one-year statute of limitations, 15 U.S.C. § 1640(e), unless Plaintiff can establish

that equitable tolling applies.  *Au I*, 2011 WL 3422780 at *2 n.4 (citing *King v.*

---

[18]  As the court explained in *Au I*, 2011 WL 3422780, at *2 n.4, Plaintiff cannot state a TILA rescission claim because such claim is time-barred and not subject to equitable tolling. *See* 15 U.S.C. § 1635(f); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (explaining that § 1635(f) is an absolute statute of repose barring "any [TILA rescission] claims filed more than three years after the consummation of the transaction").

[19]  The First Amended Complaint, removed to this court on April 14, 2011, was filed on March 24, 2011.  Doc. No. 1-1, First Am. Compl. at 1.  The original state court Complaint is not in the record, but the Notice of Removal states that an initial Complaint was filed on March 15, 2011.  Doc. No. 1, Notice of Removal at 1.

*California*, 784 F.2d 910, 915 (9th Cir. 1986)).  For violations of TILA's

disclosure requirements, the period begins to run "when the plaintiff[] executed

[his] loan documents, because [he] could have discovered the alleged disclosure

violations and discrepancies at that time."  *Cervantes v. Countrywide Home Loans,*

*Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (citing 15 U.S.C. § 1640(e)).

But Plaintiff has provided absolutely no basis to justify a three-year

equitable tolling period (again, the transaction arose in February 2007, and Plaintiff

did not file suit until over four years later -- over three years late).  Equitable

tolling can apply "where, despite all due diligence, the party invoking equitable

tolling is unable to obtain vital information bearing on the existence of the claim."

*Id.* (quoting *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001)); *King*,

784 F.2d at 915 ("[T]he doctrine of equitable tolling may, in the appropriate

circumstances, suspend the limitations period until the borrower discovers or had

reasonable opportunity to discover the . . .  nondisclosures that form the basis of

the TILA action.").  Plaintiff admits he had knowledge at closing on February 2,

2007 that he had not received the disclosures he claims were required under TILA.

*See, e.g.*, Doc. No. 208-3 at 22, Au Dep. at 105 & Ex. 9 (letter of February 6, 2009

stating "I was never provided a good faith estimate [from the February 2, 2007

transaction] although I requested a copy.").  There is thus no basis for equitable

tolling to apply here.  *See, e.g.*, *Cervantes*, 656 F.3d at 1045 (rejecting equitable tolling argument because "the plaintiffs have not alleged circumstances beyond their control that prevented them [from learning of the TILA violations]"); *Meyer v. Ameriquest Mortg. Co*., 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations).  And there is no evidence that Republic concealed terms -- they are plainly listed on documents that Plaintiff signed on February 2, 2007, and indeed, Plaintiff acknowledges he specifically questioned the figures at that time, but signed the documents after speaking with Cotton.

Accordingly -- even if there is a dispute as to which documents Plaintiff received in January and February 2007 -- the court GRANTS Republic's Motion for Summary Judgment as to Count Five, and DENIES Plaintiff's Motion for Partial Summary Judgment in that regard.

**E.     Count Ten -- HRS Chapter 480**

Lastly, Republic seeks summary judgment as to Plaintiff's claims in Count Ten alleging that Republic committed unfair and deceptive acts in violation

of HRS § 480-2.[20]  Count Ten asserts that Republic and other Defendants violated § 480-2 by: (1) violating TILA and the Real Estate Settlement Practices Act ("RESPA"),[21] Doc. No. 128, Fourth AC ¶ 76; (2) "failing to comply with the terms and conditions of the mortgage loan commitment made by Defendant Chad Cotton," *id.* ¶ 77; (3) violating HRS Ch. 454 "as an unlicensed mortgage broker and solicitor of mortgage loans, *id.* ¶ 78; (4) violating (the former) HRS §§ 454-3.1(1) & (2),[22] *id.* ¶ 79; and (5) failing to disclose that the note and mortgage were assigned to Sand Canyon, and then to Wells Fargo as part of a PSA.  *Id.* ¶ 83.

---

[20]  HRS § 480-2 provides, in pertinent part: "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

[21]  The Fourth AC does not allege that Republic violated RESPA.  Rather, the allegations in Count Ten regarding RESPA appear to be directed towards Homeward, as set forth in Count Nine of the Fourth AC.  *See* Doc. No. 128, Fourth AC ¶ 72.

[22]  Repealed effective January 1, 2011, HRS § 454-3.1 provided:

For any transaction between a mortgage broker or a mortgage solicitor and a borrower, the following requirements shall apply:

(1) A mortgage broker and a mortgage solicitor shall comply with all provisions of the Real Estate Settlement Procedures Act, the Truth in Lending Act, and the Equal Credit Opportunity Act, as those laws currently exist or as they may be amended.
(2) Any written commitment letter to make a mortgage loan with specified terms, including loan amount, interest rate, points, and payment terms, which is issued by a mortgage broker or solicitor and accepted by a borrower, must be honored by the mortgage broker or solicitor if the borrower has completely satisfied all of the conditions of the commitment in a timely manner and prior to the specified expiration date of the commitment.

Count Ten also asserts that conduct in "fraudulently inducing Plaintiff Au to obtain a $700,000 mortgage on his residential property . . . at the interest rate of 8.925% per annum, and the failure to provide a TILA good faith estimate . . . is the basis to impose HRS 480-12." *Id.* ¶ 84.  (HRS § 480-12 provides that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity").  Upon review of each ground, the court concludes that Republic is entitled to summary judgment on Count Ten.

First, as to ground one, federal law preempts § 480-2 claims that are based on the same conduct alleged to violate TILA in originating the loan or failing to provide TILA disclosures.  *See, e.g.*, *Kajitani v. Downey Sav. & Loan Ass'n*, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008) (holding that TILA preempts a claim under HRS Ch. 480, where both are based on a lender's actions and representations in originating the loan); *Matsumura v. Bank of Am., N.A.*, 2012 WL 463933, at *6 n.7 (D. Haw. Feb. 10, 2012) ("Any claims under HRS Ch. 480 based upon violations of TILA (e.g., failure to provide sufficient copies of right-to-cancel forms) are barred."); *Tedder v. Deutsche Bank Nat'l Trust Co.*, 863 F. Supp. 2d 1020, 1030 (D. Haw. 2012) ("To the extent Plaintiff alleges [a § 480-2] claim based on the alleged failure to provide TILA disclosure documents, such claims are preempted to the extent they are based on alleged TILA violations."); *see also Stanton v. Bank*

*of Am., N.A.*, 2010 WL 4176375, at \*12 (D. Haw. Oct. 9, 2010) ("[T]he fact that

. . . an action is contrary to RESPA (or contractual mandates) does not constitute a

per se unfair business practice because RESPA and HRS § 480-2 have differing

'scope and application.'") (citation omitted).  Plaintiff's claims regarding the

failure to disclose "interest rates, charges, and the terms of financing" in violation

of TILA are barred.  *Kajitani*, 647 F. Supp. 2d at 1220.

Second, any § 480-2 claims based on the February 2, 2007 transaction

such as the failure to honor the oral terms allegedly promised (*e.g.*, grounds two

and four) are barred by the four-year statute of limitations in HRS § 480-24(a).[23]

*See, e.g.*, *Rundgren v. Bank of N.Y. Mellon*, 2010 WL 4066878, at \*6 (D. Haw.

Oct. 14, 2010) ("This four-year period begins to run from the date of the

occurrence of the violation, as opposed to the discovery of the alleged violation.")

(citing *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1289 (D. Haw. 2007)).  Aside

from claims based strictly on Plaintiff's knowledge gained on February 2, 2007

(which are clearly barred), Plaintiff also testified that he expected to get a "loan

modification" with a 7.5% initial rate within the month after closing (i.e., February

---

[23]  Section 480-24(a) provides that "[a]ny action to enforce a cause of action arising under [chapter 480] shall be barred unless commenced within four years after the cause of action accrues. . . .  For the purpose of this section, a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation."

2007).  Doc. No. 208-3 at 8, Au Dep. at 44-45.  That is, Plaintiff knew in February 2007 that he had not gotten the terms that Cotton had allegedly promised him.  And Plaintiff filed his initial Complaint in this action in state court on March 15, 2011, more than four years after those claims accrued.

Moreover, none of the tolling provisions in § 480-24(b) apply.  *See Rundgren v. Bank of N.Y. Mellon*, 777 F. Supp. 2d 1224, 1231 (D. Haw. 2011) (construing "HRS Ch. 480 in accordance with federal cases interpreting similar federal antitrust laws such as 15 U.S.C. § 15b, . . . [such that] the statute of limitations on a HRS Ch. 480 claim may be tolled under the equitable tolling doctrine of fraudulent concealment").  Plaintiff has not presented any evidence that would support a finding of fraudulent concealment, or any other applicable equitable tolling doctrine.[24]

---

[24]  Plaintiff appears to contend that Republic was involved in a "continuing violation" of § 480-2, arguing that he brought suit within four years from alleged misrepresentations Republic made in its responses to him of May 22, 2009 and June 23, 2009.  *See* Doc. No. 230, Pl.'s Opp'n at 23.  Plaintiff relies on *Anzai v. Chevron Corp.*, 168 F. Supp. 2d 1180, 1187 (D. Haw. 2001), which held that, in a continuing conspiracy, overt acts occurring within the statute of limitations can enable recovery of damages that occur outside the four year limitations period in § 480-24(a).  Plaintiff is referring to certain communications within the four year limitations period:

> (1) a May 22, 2009 email from Republic's counsel, Ari Karen, stating in part that "we have never been trying to stall things. . . .  gathering the necessary documents has been very difficult and time consuming. . . .  the servicer is requiring that you sign the attached authorization," Doc. No. 231-13, Pl.'s Opp'n CSF Ex. 13; and

> (2) a June 23, 2009 email from Ari Karen stating in part "you do not understand

(continued...)

34

Finally, on the merits, the other allegations (violations of the former

Chapter 454, or violations of the former § 454-3.1) cannot form the basis of a

§ 480-2 claim because there was no violation of Chapter 454.  And, as the court

concluded in a prior Order when dismissing a § 480-2 claim as to Wells Fargo,

> Plaintiff has not explained how [Republic] could have
> committed an unfair or deceptive act simply by failing to
> disclose that it was assigned the Note as part of a PSA in
> April 2007, or by only having been assigned the
> Mortgage in January of 2012.  Properly executed, the use
> of pooling agreements in the loan securitization process
> is not inherently unfair or deceptive.  *See, e.g.*, *Menashe
> [v. Bank of N.Y.]*, 2012 WL 397437, at *18 [(D. Haw.
> Feb. 6, 2012)] (citing numerous cases rejecting that
> securitization of mortgage loan provides mortgagor a
> cause of action); *Rodenhurst v. Bank of Am.*, 773 F.
> Supp. 2d 886, 898 (D. Haw. 2011) (same).

*Au*, 2012 WL 3113147, at *11.

What's more, as to a claim for rescission under HRS § 480-12,

---

[24](...continued)
what is entailed in obtaining these documents. . . .  You have my assurances that
nothing is being done to tamper with any documents.  You must understand that
the companies you dealt with are all out of business, so it is very difficult to track
down and obtain the information."  Doc. No. 231-14, Pl.'s Opp'n CSF Ex. 14.

But neither of these communications are part of a continuing pattern of related improper
conduct on the part of Republic.  *Cf., e.g.*, *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp.
2d 1156, 1161 (N.D. Cal. 2003) (analyzing the "continuing violation" doctrine, stating that "[t]he
key is whether the conduct complained of constitutes a continuing pattern and course of conduct
as opposed to unrelated discrete acts").  That is, the 2009 communications from Republic are not
part of a "continuing violation" --  at most they are "discrete acts."  And, in any event, Plaintiff
has no evidence that any statements in these emails are in fact false or misleading.

Plaintiff has set forth no evidence indicating he has the ability to tender loan proceeds back to the lender, as necessary to obtain rescission. *See, e.g.*, *Young v. Bank of N.Y. Mellon*, 848 F. Supp. 2d 1182, 1193-94 (D. Haw. 2012) ("[A] plaintiff seeking affirmatively to void a mortgage transaction under § 480-12 must be able to 'place the parties in as close a position as they held prior to the transaction'") (quoting *Skaggs*, 2011 WL 3861373, at *11). Thus, even if there were a question as to whether a § 480-12 claim otherwise survives, Plaintiff has not established that he is entitled to rescission as a matter of law.

Accordingly, the court GRANTS Republic's Motion for Summary Judgment as to Count Ten, and DENIES Plaintiff's corresponding Motion for Partial Summary Judgment in this regard.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Republic State Mortgage Company's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Motion is DENIED as to Count One, Two, and Three, but is

///

///

///

///

GRANTED as to Counts Four, Five, and Ten.  Plaintiff Ronald Au's

corresponding Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 29, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Au v. Republic State Mortg. Co.*, Civ. No. 11-00251 JMS-KSC, Order Granting in Part and Denying in Part Defendant Republic State Mortgage Company's Motion for Summary Judgment, and Denying Plaintiff's Motion for Partial Summary Judgment